UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANNIE TOVARES,<br><br>                Plaintiff,<br><br>vs.<br><br>GALLAGHER BASSETT SERVICES, INC., AND PRAETORIAN INSURANCE COMPANY,<br><br>                Defendants. | CIV. 16-5051-JLV<br><br>ORDER |

**INTRODUCTION**

Plaintiff Annie Tovares filed an action against the defendants Gallagher Bassett Services, Inc., and Praetorian Insurance Company alleging bad faith and misrepresentation in violation of South Dakota law. (Docket 1). The complaint also seeks attorney's fees and punitive damages. Id. On October 3, 2017, defendants filed their answers to plaintiff's complaint. (Dockets 37 & 39). On July 6, 2018, defendants filed a joint motion seeking leave to file amended answers, together with a supporting brief.[1] (Dockets 60 & 61). Plaintiff resists defendants' motion. (Docket 69). For the reasons stated below, defendants' motion is granted.

---

[1] Consistent with D.S.D. LR Civ. 15.1 defendants filed copies of their proposed answers with the proposed changes underlined. (Dockets 61-1 & 61-2). Because the proposed answers are identical in the pleadings sections, except when referencing each defendant's name, the court will refer to the proposed answers as "defendants' proposed answer."

## SUMMARY OF FACTS

The following summary of facts is taken from the court's order of September 12, 2017, to provide background for defendants' motion for leave to file amended answers.[2] Praetorian issued a worker's compensation insurance policy to Ms. Tovares' employer, Menard, Inc. ("Menards"). (Docket 34 at p. 6). Praetorian delegated its claim administration services to Gallagher. Both defendants understood that Praetorian would act as the principal and Gallagher would act as Praetorian's agent in performing claim administration duties. Those duties included good faith and fair dealing, processing paperwork relating to claims, investigating claims, obtaining medical reports, monitoring treatment, verifying coverage, adjusting, settling and defending claims and issuing checks for payment of benefits.

On March 19, 2014, while working at Menards in Rapid City, South Dakota, Ms. Tavares fell sideways and landed hard on a concrete floor, bruising her left hip and arm. Menards received actual notice of her fall and the incident was recorded on one of its security cameras.

---

[2]Because the court was dealing with the defendants' Fed. R. Civ. P. 12(b)(1) motion, the plaintiff's allegations of facts were deemed true. (Docket 34 at pp. 5-6) (referencing Great Rivers Habitat Alliance v. Federal Emergency Management Agency, 615 F.3d 985, 988 (8th Cir. 2010)). Internal references to plaintiff's complaint will be omitted for purposes of this order.

Over the next week, Ms. Tovares began experiencing intermittent ringing in her ears, blurry vision, light-headedness and headaches. On March 26, 2014, she went to the Rapid City Regional Hospital emergency room. After obtaining her history of the work-related fall, the attending physician prescribed a CT scan of Ms. Tovares' head to rule out the presence of internal bleeding or other brain injuries. The CT scan was negative for internal bleeding. Her attending physician noted the "most likely cause of her symptoms is . . . [her] head injury." Ms. Torvares was referred to an eye doctor to address her blurry vision. The eye examination disclosed no optical injuries. The bills for the emergency room and the eye doctor totaled approximately $2,900 and were submitted to Gallagher, as Praetorian's agent.

On April 30, 2014, Gallagher wrote to Ms. Tovares stating "we are in receipt of your claim for Worker's Compensation benefits due to an *alleged* injury from an *alleged* accident on or around 3/19/2014. We have investigated this claim and found no evidence to support your claim for benefits under South Dakota Worker's Compensation provisions."[3] As the result of Gallagher's failure to pay the medical bills, Ms. Tovares was forced to take out a loan to pay these expenses.

On May 16, 2014, Ms. Tovares' attorney wrote Gallagher requesting a copy of the video documenting her fall at Menards. Gallagher refused the request stating that a subpoena would be required as the video belonged to

---

[3]Emphasis in complaint (Docket 6 ¶ 24).

Menards.  On October 9, 2014, counsel wrote Gallagher a second time requesting a copy of the video and stating "[b]y withholding important evidence, you force Ms. Tovares to take legal action, which makes it very difficult for her (and other people like her) to simply get the evidence needed to determine whether their claim is valid."  Counsel advised Gallagher that if a positive response was not received by October 16, 2014, a petition for hearing would be filed with the South Dakota Department of Labor.  On October 20, 2014, having heard nothing from Gallagher, Ms. Tovares filed a petition for hearing with the Department of Labor.

Praetorian admitted in its answer to the petition that Ms. Tovares had fallen on March 19, 2014, and that she sought medical attention on March 26, 2014.  The answer denied any health care provider indicated the March 19 injury was a major contributing cause of any medical condition or need for treatment.  The answer concluded with a declaration that "discovery [must be] conducted and expert opinions . . . obtained to determine the exact nature of [Ms. Tovares'] alleged injuries, [her] current medical condition, and whether [her] medical treatment was related to the incident . . . ."

On February 6, 2015, the defendants offered $3,000, with a denial of compensability, to settle Ms. Tovares' claim.  Ms. Tovares rejected the offer, stating she was owed $3,225.12, together with interest, to fully satisfy the medical bills.  On March 19, 2015, a check was tendered from "Gallagher

4

Bassett Services, Inc., for Praetorian Ins. Co." for $3,225.12.  Ms. Tovares dismissed her petition with the Department of Labor.

## DEFENDANTS' PROPOSED ANSWER

Defendants' proposed answer seeks to add the following affirmative defenses:

1. Defendant[s] specifically assert . . . the affirmative defense of failure to exhaust administrative remedies.  Plaintiff failed to obtain an administrative ruling that any workers' compensation claim was compensable or that any benefits were due and owing pursuant to the South Dakota workers' compensation laws.  Plaintiff did not obtain a finding the medical bills subject of this litigation were compensable under the South Dakota workers' compensation laws.

2. Plaintiff dismissed with prejudice any administrative claim for benefits thereby waiving her claims asserted herein.

3. To the extent a failure to exhaust administrative remedy is considered a failure to comply with conditions precedent, Plaintiff has failed to meet the conditions precedent to bringing this claim.

(Dockets 61-1 at p. 4; 61-2 at p. 4).

## ANALYSIS

The court set January 10, 2018, as the deadline to amend pleadings. (Docket 36 ¶ 3).  Defendants filed their motion for leave to file amended answers on July 6, 2018, six months after the court's deadline for doing so.

Defendants' "belated motion to amend [their] answer and plead . . . affirmative . . . defense[s] implicat[e] three different . . . rules of civil procedure." Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 714 (8th Cir. 2008).  Fed. R. Civ. P. 8(c) requires defendants to plead their affirmative defenses in their

answer.  Id. at p. 715.  "Generally, failure to plead an affirmative defense results in a waiver of that defense."  Id. (citing First Union National Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir. 2007)).  "However, when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal."  Id. (internal quotation marks and citation omitted).

"In addition to Rule 8(c)," defendants' motion "implicat[es] both Rule 15(a) and Rule 16(b)."  Id.  Rule 15(a) governs pretrial amendment of pleadings and states that where an amendment is not sought "as a matter of course"—as defined by the Rule—"a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 16(b) directs "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).

"The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit."  Sherman, 532 F.3d at 716.  In the United States Court of Appeals for the Eighth Circuit, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule."  Id. (internal citation omitted).  "Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a)."  Id.  "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional.  To permit

6

district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) 'would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.' " Id. (citing Sosa v. Airprint Systems, Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)).

Because defendants filed the motion for leave to file an amended answer outside of the court's scheduling order "the liberal policy favoring amendments no longer applie[s,]" and defendants "need to make a showing of good cause." Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 395 (8th Cir. 2016) (internal quotation marks omitted) (citing Fed. R. Civ. P. 16(b)(4)) ("A schedule may be modified only for good cause and with the judge's consent.")). "When considering good cause for an amended [answer], the diligence of the party seeking the amendment is an important consideration." Id. Courts "focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. Where there has been no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings, then [the court] may conclude that the moving party has failed to show good cause." Hartis v. Chicago Title Ins. Co., 694 F.3d 935, 948 (8th Cir. 2012) (internal citation and quotation marks omitted). "Motions that would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and

7

strategy' " are particularly disfavored." Kozlov, 818 F.3d at 395 (citing Steir v. Girl Scouts of the U.S.A., 383 F.3d 7, 12 (1st Cir. 2004)).

Defendants assert their "affirmative defenses were inadvertently omitted . . . but had been otherwise disclosed in discovery." (Docket 61 at pp. 2-3). Defendants submit "[p]laintiff will not suffer undue prejudice, in part due to the lack of significant discovery . . . and the lack of a pending trial[.]" Id. at p. 2.

Plaintiff's response argues defendants' "motion is futile . . . . [made] in bad faith. . . . [and the] delay would unfairly prejudice [plaintiff]." (Docket 69 at pp. 1-2). The only suggestion of futility offered by plaintiff is that she had "no administrative remedies to exhaust[.]" Id. at p. 1. Addressing her assertion the affirmative defenses are made in "bad faith," plaintiff states the defendants "paid [her] workers comp [sic] claim in full, with interest, without reserving any dispute." Id. The prejudice plaintiff suggests she will suffer is that if she "did have some administrative remedy open to her, the delay in the Defendants' assertion of the defense [of exhaustion of administrative remedies] would likely harm her ability to pursue the remedy with the [South Dakota] Department of Labor." Id. at p. 2.

Plaintiff's response does not address defendants' representation to the court. See Docket 69. The court accepts defense counsel's declaration the failure to include the three affirmative defenses was an inadvertent mistake. See Fed. R. Civ. P. 11(b)(c) & (c)(3) ("By presenting to the court a . . . written

8

motion . . . an attorney . . . certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ."). This factor favors granting defendants' motion.

Plaintiff's response lacks the specificity necessary to permit the court to analyze the required factors addressing defendants' motion. Plaintiff does not address whether she will be required to engage in additional discovery or if she will be compelled to make any major change in her trial tactics. Kozlov, 818 F.3d at 395. The court finds these factors favor granting defendants' motion.

Plaintiff does not dispute these affirmative defenses were disclosed in discovery. See Docket 69. Having been exposed to the possible addition of these defenses during the course of discovery, plaintiff cannot claim surprise in response to defendants' motion. This factor favors granting defendants' motion.

No trial date has been set by the court. Plaintiff will suffer no prejudice by modifying the time for resolution of plaintiff's claim. Kozlov, 818 F.3d at 395. This factor favors granting defendants' motion.

The court finds defendants' motion is not far removed from the court's deadline for amending pleadings. In this case there have been no earlier motions for extensions of time to amend pleadings or multiple orders moving deadlines. Although filed beyond the deadline established, the court finds defendants' motion appears to have been promptly filed upon noting the

9

defenses had not been asserted in defendants' answers. There is no intent to disregard or frustrate the court's management and control of its calendar. This factor favors granting defendants' motion.

The court finds Rule 16(b)(4) is met. This is not a case were the motion to amend "would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy[.]'" Kozlov, 818 F.3d at 395 (citing Steir, 383 F.3d at 12).

The court also acknowledges Kontrick v. Ryan, 540 U.S. 443 (2004) ("An answer may be amended to include an inadvertently omitted affirmative defense, and even after the time to amend 'of course' has passed, 'leave [to amend] shall be freely given when justice so requires.'" Id. at 459 (citing Fed. R. Civ. P. 15(a)). Because no significant prejudice will befall plaintiff by permitting the filing of the amended answer, the court finds justice requires granting defendants' motion under Fed. R. Civ. P. 15(a)(2).

## ORDER

Having considered the arguments of counsel and finding good cause pursuant to Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 15(a)(2), it is

ORDERED that defendants' motion for leave to file amended answers (Docket 60) is granted.

IT IS FURTHER ORDERED that defendants shall file "a clean original" of their amended answers (Dockets 61-1 & 61-2) "within 7 days." D.S.D. Civ. LR 15.1.

Dated March 25, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE