UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANNIE TOVARES,<br><br>        Plaintiff,<br><br>vs.<br><br>GALLAGHER BASSETT SERVICES,<br>INC., AND PRAETORIAN INSURANCE<br>COMPANY,<br><br>        Defendants. | CIV. 16-5051-JLV<br><br><br>ORDER |

## INTRODUCTION

Plaintiff Annie Tovares filed an action against the defendants Gallagher
Bassett Services, Inc., and Praetorian Insurance Company alleging bad faith
and misrepresentation in violation of South Dakota law.   (Docket 1).
Defendants filed separate answers to plaintiff's complaint.[1]   (Dockets 37 & 39).
Defendants filed a motion for summary judgment, together with a brief, an
affidavit with nine exhibits and defendants' statement of undisputed material
facts.   (Dockets 62, 63, 64, 64-1 through 64-9 & 65).   Plaintiff filed a
responsive brief, together with plaintiff's response to defendants' statement of
undisputed facts with ten exhibits and plaintiff's declaration in support of Fed.

---

[1]The court granted defendants' motion for leave to file amended answers.
(Docket 84).   Defendants are required to file their amended answers within
seven days of the order.   Id. at p. 11.

R. Civ. P. 56(d) discovery.[2]   (Dockets 67, 67-1 through 67-10, 68 & 70).

Defendants filed a reply brief with one exhibit in support of their motion for

summary judgment.   (Dockets 72 & 72-1).

Plaintiff filed a motion seeking leave to file supplemental authority, a

supporting brief and one case.   (Dockets 78, 78-1 & 79).   Defendants filed a

brief in response to plaintiff's motion.   (Docket 82).

For the reasons stated below, plaintiff's motion to file supplemental

authority is granted, defendants' motion for summary judgment is granted in

part and denied in part, and plaintiff's motion for Rule 56(d) discovery is denied

as moot.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if

the movant can "show that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a).   Once the moving party meets its burden, the nonmoving party may not

rest on the allegations or denials in the pleadings, but rather must produce

affirmative evidence setting forth specific facts showing that a genuine issue of

material fact exists.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

---

[2]Plaintiff did not file a separate motion seeking leave to conduct discovery under Rule 56(d).   See D.S.D. Civ. LR 7.1B.   The court will treat plaintiff's declaration as a motion for purposes of resolving plaintiff's request in this order.

(1986).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248.  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate.  Id.  However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

## UNDISPUTED MATERIAL FACTS

The following recitation consists of the material facts developed from the complaint (Docket 1), defendants' answers (Dockets 37 & 39),[3] the parties' statements of undisputed material facts (Dockets 65 & 67) and other evidence where indicated.[4] Where a statement of fact is admitted by the opposing party, the court will only reference the initiating document. These facts are "viewed in the light most favorable to the [party] opposing the motion." Matsushita Elec. Indus. Co., 475 U.S. at 587.[5] The facts material to defendant's motion for summary judgment are as follows.

---

[3]The only difference between defendants' answers and amended answers is the inclusion of three affirmative defenses. Compare Dockets 36 & 39 with 61-1 & 61-2. Because the parties addressed the affirmative defenses in briefing, references to defendants' responses to allegations in the complaint will be to the answers. (Dockets 37 & 39). Because the admissions in each answer are identical, the court will only reference the answer of Defendant Gallagher Bassett Services, Inc., unless otherwise indicated. (Docket 37).

[4]The court references the parties' submissions without quotation marks, unless indicated.

[5]Plaintiff statement of material facts on which there exists a genuine material fact are not contained in a separate filing but rather are laced throughout plaintiff's brief in opposition to defendants' motion for summary judgment. See Docket 70 at pp. 4-13. The court will not reject the materials to plaintiff's detriment or sanction plaintiff's counsel in this case. In the future, counsel must file a separate document containing plaintiff's statement of contested material facts. D.S.D. Civ. LR 56.1B.

Plaintiff Annie Tovares works at Menards in Rapid City, South Dakota. (Docket 67-1 ¶ 1).   On Wednesday, March 19, 2014, she fell at work.   Id. ¶ 3. One of Menards' surveillance cameras recorded her fall.[6]   Ms. Tovares did not hit her head, but she immediately felt dazed, disoriented and like her brain got jarred.   Id.¶ 4.   It took a few minutes to collect herself.   Id. ¶ 5.

The following Tuesday, Ms. Tovares had a bloody nose at work and that night she had blurry vision and a sharp ringing in her ears.   Id. ¶ 6; see also Docket 67-2 at p. 4.   At work the following morning the lights hurt Ms. Tovares' eyes and head.   (Docket 67-1 ¶ 7).   She felt dizzy and was worried something serious happened because of her fall.   Id.   She spoke to her supervisor and went to the emergency room at the Rapid City Regional Hospital in Rapid City, South Dakota.   Id.; see also Docket 67-2 at p. 4.   After visiting the ER, Ms. Tovares went to see her ophthalmologist at Wright Vision Center. Id. ¶ 9; see also Docket 65 ¶ 29.   As instructed by the ER physician, Ms. Tovares took a couple of days off work.   (Docket 67-1 ¶ 14; see also Docket 65 ¶ 30).

Ms. Tovares' bill for the hospital services, CT scan and ER activities totaled $2,513.   (Dockets 67-2 at p. 71; 67-3 at p. 4).   The bill from Wright Vision Clinic was $185.   (Docket 67-3 at p. 6).   Dakota Radiology billed Ms. Tovares $165.   Id. at p. 3.   Ms. Tovares borrowed money to pay the medical

---

[6]See Docket 47-6 (DVD in Clerk of Court file).

bills and submitted a worker's compensation claim for these expenses.

(Docket 67-1 ¶ 15).

Defendant Praetorian Insurance Company ("Praetorian") issued a policy of worker's compensation insurance to Ms. Tovares' employer, Menards, Inc. (Docket 1 ¶ 6).   Gallagher Bassett Services, Inc. ("GBS") is the claim administrator which handled Ms. Tovares' claim for Praetorian.   (Docket 67-1 at p. 8).

Christina Manwaring was the adjustor assigned by GBS to handle Ms. Tovares' workers' compensation claim.   (Docket 67-2).   Ms. Manwaring's notes of her telephone contact with Ms. Tovares on March 31, 2014, contain plaintiff's description of her incident at Menards:[7]

> She ws done, pulling a box off the cart, next she new she was on the floor.   She's not sure how it happened.   Thinks L. foot slipped, hit L. hip, L. underarm struck the box she was handling, and it was scraped and bruised.   Initially she was in so much pain she couldn't believe it.   The impact of her body hitting the concrete, maybe the weight of the box made her fall even harder.   She did not strike her head, however once she stood up, he whole body was vibrating.   She knows she jarred her brain.   She just stood there to try and re-gain her "marbles" says she was in shock.   Once the pain subsided, she felt fine.   She didn't have any broken bones. Physically she feels fine.   A week later, she began experiencing lightheadedness and dizziness.   Equilibrium was off.   Numerous time of ringing in her head.   Went to doctor on 3/26, and doctor asked which ear was ringing, she couldn't tell.   Vision is slightly blurry and pain in her head.   She's been better the last few days. Went to ER on 3/26/2013 b/c that morning when she went to work the bright lights in the building hurt her head and eyes.   While she

---

[7]All notes, correspondence and medical records are reported verbatim without correction or clarification.

was at ER, the did a CT scan. They said everything was negative. But she was highly disappointed in the hospital staff. Never asked to see her bruises, no x-rays of her body were done. She felt like they didn't believe what happened to her. Up until that day, she had had a sharp ringing in her head, then went away. That night she had some minor ringing in head, so she knows she jarred her brain and she knows that can cause problems down the road. She had a minor cold about a month ago. Does not suffer from allergies/sinus issues. She did receive a call the next day to see how she was feeling. FU with optimologist [sic] on 3/26/2014 and told her everything looked fine. She was concerned about the lens being dislodged.

(Docket 67-2 at p. 10; <u>see</u> <u>also</u> Docket 65 ¶ ¶ 3-7.).

ER records obtained by GBS contain the following history of Ms. Tovares present illness:

Patient is a 64-year-old female who presents with blurred vision. She states that a week ago she fell and landed on her left hip and left elbow. She denies shooting her head at that time. Over the past week since the fall she has had intermittent blurred vision and ringing in her years. She has also had an intermittent sharp headache but has not required medication as the heading duration he was very brief. She denies numbness, tingling, or weakness. No vertigo or lightheadedness. She denies pain otherwise. A month ago she saw ophthalmology and they stented her left tear duct for dry eye.

(Docket 67-2 at p. 57; <u>see</u> <u>also</u> Docket 65 ¶¶ 9-10). A CT scan of Ms. Tovares' head reported "[v]entricles and sulci are normal. There is no intracranial hemorrhage or mass. No bony abnormality identified." (Docket 67-2 at p. 58). The CT report concluded "[n]ormal CT head." <u>Id.</u>; <u>see</u> <u>also</u> Docket 65 ¶ 28. ER physician Dr. Donald Neilson charted "[t]he most likely cause of her symptoms is that they are related to a head injury. She is comfortable with discharge and will follow up with her primary physician." (Docket 67-2 at

p. 59).   A Registered Nurse signed an "Excused Absence from Work and

School," excusing Ms. Tovares from work for two days.   Id. at p. 47.

An instruction sheet given to Ms. Tovares at discharge from the ER

contained the following caution:

> You have had a head injury which does not appear serious at this
> time.   A **concussion** is a state of changed mental ability, usually
> from a blow to the head.   You should take clear liquids for the rest
> of the day and then resume your regular diet.   You should not take
> sedatives or alcoholic beverages for 48 hours after discharge.   After
> injuries such as yours, most problems occur within the first 24
> hours.

Id. at p. 45 (emphasis in original).   The "minor symptoms" which may occur

included "dizziness," "headaches" and "double vision."   Id. (capitalization

omitted).   Under "Home Care Instructions," the instruction sheet stated "[s]ide

effects may occur up to 7-10 days following the injury.   It is important

for you to carefully monitor your condition and contact your caregiver or

seek immediate medical attention if there is a change in your condition."   Id.

(bold and capitalization omitted).

On April 10, 2014, Ms. Manwaring noted in the claim file that the

"[r]eserves are appropriate for probable ultimate cost.   No changes are

warranted at this time.   Claimant has not lost anytime from work and medical

reserves reflect conservative care."[8]   (Docket 67-2 at p. 15).   Regarding

resolution and closure of the claim file, Ms. Manwaring noted "[o]nce claimant

---

[8]The financial reserves made in this claim file are not in the record.

is placed at MMI [maximum medical improvement], file can be prepared for closure as no permanency is anticipated. File closure may be viable within 90 days if claimant reaches MMI in the near future." Id. Her recommendations for management of the claim file included the following:

1.   Build rapport with claimant to avoid litigation.

2.   Obtain updated medical reports and outline recommended treatment plan in the file. Push for eventual MMI release.

3.   Document completion and submission of all state forms and filings.

4.   Complete initial investigation and document compensability decision in the file notes in 010 note.

5.   Complete updated POA no later than 5/6/14.

Id.

On April 23, 2014, Ms. Manwaring sought permission to deny Ms. Tovares' claim. In that request, she stated in part the following:

The claimant maintains she did NOT hit her head when she fell. The ER notes indicate her complaints are likely from a head injury. Claimant was referred to eye doctor for FU due to blurred vision. These notes have also been received and indicate the claimant had had her tear ducts stinted one month prior as well as previous cataract surgery. There were no issued found. Requesting authority to deny file based on claimant's treatment appearing to have no relation to her work incident.

Id. at p. 17 (capitalization in original); see also Docket 65 ¶ 12). Ms. Manwaring's supervisor, Angela Smith, agreed. "Reviewed the file with adjuster and agree with recommendation for denial due to the head complaints not being related to her work incident. . . . Review and approval of the denial

sent to ABM [Assistant Branch Manager], Dorothy Stolle this date." (Docket 67-2 at pp. 17-18). On April 29, 2014, Ms. Stolle authorized closing the file. "Agree with denial of file at this time as medical diagnosis does not relate to work injury." Id. at pp. 18-19.

On April 30, 2014, Ms. Manwaring sent Ms. Tovares a letter on GBS letterhead. (Docket 67-2 at p. 63). The letter stated in part: "We have investigated this claim and found no evidence to support your claim for benefits under South Dakota Workers' Compensation provisions. We must, therefore, accordingly deny your claim." Id.

On May 16, 2014, Attorney Michael Simpson advised Ms. Manwaring he was representing Ms. Tovares on her claim. (Docket 67-2 at p. 84; see also Docket 65 ¶ 15). Ms. Manwaring responded to Attorney Simpson on May 28, 2014. (Docket 67-2 at p. 85). She provided him with the medical records which GBS obtained and advised him "[a]s the surveillance video is property of Menard, Inc., a subpoena will be required in order to release the information to you." Id. She also wrote: "[p]lease note, your client acknowledges she did not strike her head in her fall. She presented to the ER on week later at which time a CT scan was obtained and negative for a head injury. She was diagnosed with blurred vision and headache and referred to her optometrist for FU." Id.

On September 17, 2014, Ms. Manwaring sent a follow-up letter to Attorney Simpson. Id. at p. 77. In part, her letter asked, "[t]o date we have

received no further response from you.   Can you please verify whether or not you still represent Ms. Tovares, and, if so, where you are with your investigation of her claim?"   Id.; see also Docket 65 ¶¶ 16-17.

On October 9, 2014, Attorney Simpson wrote Ms. Manwaring.   (Docket 67-2 at pp. 78-79).   After summarizing the content of their previous correspondence, he wrote:

> In addition, you do not mention in your May 28th letter my request for a recorded statement of Ms. Tovares or other recorded statements or other information which supports your denial.
>
> Clearly, the video tape is discoverable and I need this information in order to represent Ms. Tovares and give her good legal advice about whether or not her medical bills should be paid by workers' compensation.   In addition, her recorded statement and any other recorded statements are relevant to this question as well.
>
> If you do not provide me with the video tape and the recorded statement or statements, then I am forced to file a petition for hearing with the state Department of Labor in order that I can get this information.
>
> I am going to calendar this for seven (7) days or until Thursday, October 16, 2014.   If you do not provide me with the video and the recorded statement or statements by that time, I will be forced to file a petition for hearing with the state Department of Labor in order to get this information and in order to challenge your denial.
>
> Please be advised that if I have to do this, I will be asking the Department of Labor for my attorney fees, as I believe it is unreasonable for you to withhold important information and force the Claimant to file a petition for hearing.
>
> As I am sure you are aware, this claim only concerns medical bills and therefore it is very difficult for people such as Ms. Tavares to get lawyers to take on these claims, as it is financially difficult to do so. By withholding important evidence, you force Ms. Tovares to take legal action, which makes it very difficult for her (and other people

like her) to simply get the evidence needed to determine whether their claim is valid.

I do not want to waste the Department of Labor's time with a formal petition if I do not have to. Please reconsider your decision to not provide me with important evidence concerning compensability. Thank you.

Id.

On October 20, 2014, Attorney Simpson filed a petition for hearing with the South Dakota Department of Labor and Regulation, Division of Labor and Management, Worker's Compensation on Ms. Tovares' behalf. (Docket 67-2 at pp. 80-83; see also Docket 65 ¶ 18). On November 12, 2014, Praetorian filed an answer admitting Ms. Tovares fell on March 19, 2014, and that she sought medical attention on March 26, 2014. (Docket 1 ¶ 32).

On January 31, 2015, Attorney Daniel Ashmore, as attorney for Praetorian, e-mailed Attorney Simpson. (Docket 67-3 at pp. 16-17). Attorney Ashmore asked "[c]an we resolve this case for $2,500 for a full and final? That should allow her to get the bills paid and something for you. Let me know." Id. at p. 17.

On February 6, 2015, after talking with Ms. Tovares, Attorney Simpson rejected the $2,500 offer. Id. at p. 16. He attached a summary of the bills to date and agreed to get the Wright Vision Center bill to Attorney Ashmore. Id. Attorney Simpson indicated "the bills plus interest total over $3,000, not including the Wright bill." Id. He asked Attorney Ashmore and his clients to complete the following tasks:

1)   Pay all the bills, plus interest.

2)   File an amended answer admitting that the bills are compensable.

3)   Then I will prepare a proposed order for the DOL, dismissing the case, per the amended answer's admission of compensability.

Id.

Later that day, February 6, Attorney Ashmore e-mailed Attorney Simpson with Praetorian's response to plaintiff's demands.

As we discussed, we are willing to pay $3,000 to you to resolve this case but we will maintain our denial. I will draft an agreement accordingly and we will then dismiss the case upon approval of the agreement. You and your client will be responsible for making sure the bills are paid and your fees will come out of the amount paid. We can include that amount in the agreement if you like. Let me know if we have a deal.

Id. at p. 15; see also Docket 65 ¶ 20. Late that afternoon, Attorney Simpson responded by e-mailed to Attorney Ashmore. (Docket 67-3 at p. 15). He wrote: "[h]ere is an updated bill summary, which includes the Wright Vision Center bill. Please provide this to your client and ask them to pay the updated amount—$3225.12." Id.

While there may have been additional discussions between the attorneys which are not in the record, on February 24, 2015, Attorney Simpson sent Attorney Ashmore a letter agreeing "[u]]pon receipt of a check in the amount of $3,225.12 made out to Julius & Simpson, L.L.P. and Annie Tovares, I will file this document [a notice of dismissal with prejudice] with the Department of

13

Labor."   Id. at p. 12; see also Docket 65 ¶ 21.   An unsigned copy of the

proposed notice of dismissal with prejudice accompanied the letter.   (Docket

67-3 at p. 13).

On March 9, 2015, Attorney Ashmore tendered a check for $3,225.12 to

Attorney Simpson.   Id. at p. 8.   The letter indicated, "[i[t is my understanding

that you will now file the Notice of Dismissal with the Court."   Id.

On March 12, 2015, Attorney Simpson mailed the executed notice of

dismissal with prejudice to the South Dakota Department of Labor and

Regulation, Division of Labor and Management.   Id. at pp. 7 & 18-19; see also

Docket 65 ¶ 23.   The full text of the notice of dismissal with prejudice is:

> COMES NOW, Claimant by and through undersigned counsel, and
> hereby dismisses her Petition for Hearing with prejudice.   Claimant
> informs the Department of Labor that in her Petition for Hearing she
> requested that Employer/Insurer pay certain medical bills totaling
> $3,225.12 (including interest).   Employer/Insurer has paid these
> bills in full and therefore Claimant is dismissing her Petition for
> Hearing with prejudice.

(Docket 67-3 at p. 18; see also Docket 65 ¶ 2).   There are no unpaid medical

benefits owed to Ms. Tovares under the South Dakota Worker's Compensation

Act.   (Docket 65 ¶ 35).

**ANALYSIS**

Plaintiff filed a motion for leave to file supplemental authority, together

with a legal memorandum and a copy of Skjonsberg v. Menard, Inc., 2019 WL

237328 (S.D. August 27, 2018).   (Dockets 78, 78-1 & 79).   Defendants filed a

brief in response to plaintiff's motion.   (Docket 82).   Plaintiff's motion is granted.

Plaintiff's complaint alleges two causes of action against the defendants. (Docket 1).   Those are: count I, bad faith, and count II, misrepresentation.   <u>Id.</u> at pp. 6-7.   In addition to compensatory damages and attorney's fees, the complaint seeks punitive damages.   <u>Id.</u> at p. 8.

Defendants' motion for summary judgment asserts the following grounds for dismissal of plaintiff's complaint.

1.    Plaintiff has not demonstrated insurance policy benefits were owed and denied;

2.    Exhaustion of administrative remedies;

3.    Reasonable basis existed–head injury fairly debatable;

4.    Gallagher did not make any misrepresentation;

5.    Gallagher cannot be held legally liable for breach of the duty of good faith and fair dealing;

6.    Plaintiff suffered no damages due to defendants' conduct; and

7.    Plaintiff is not entitled to punitive damages.

(Docket 63) (capitalization and bold omitted).   The court addresses defendants' arguments in the order deemed most efficient for resolving the motion for summary judgment.

## I.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In South Dakota, a workers' compensation bad faith claim is barred until the injured employee obtains an administrative ruling she is entitled to benefits

under the worker's compensation act.   <u>Zuke v. Presentation Sisters, Inc.</u>, 589

N.W.2d 925 (S.D. 1999).   "Before a trial court may grant relief for a bad faith

denial of worker's compensation benefits, it must decide whether the plaintiff is

entitled to benefits.   This threshold issue must be decided within the worker's

compensation forum."   <u>Id.</u> at 930.   This condition precedent "furthers the goal

behind the worker's compensation laws in having a claimant's entitlement to

benefits properly determined by the agency which has the most experience and

expertise in dealing with these type of issues"   <u>Id.</u>   "Therefore, only after a

worker's compensation claimant has exhausted her remedies under the South

Dakota Worker's Compensation statutes may a trial court hear her bad faith

claim for denial [of] worker's compensation benefits."   <u>Id.</u>

 In <u>Hein v. Acuity</u>, 731 N.W.2d 231 (2007), the South Dakota Supreme

Court clarified its ruling in <u>Zuke</u>.   In <u>Hein</u>, plaintiff argued her bad faith claim

was not dependent on an ultimate award of benefits by the South Dakota

Department of Labor.   <u>Id.</u> at 237 n.5.   The Supreme Court held:

> This assertion is mistaken.   The unique circumstances
> surrounding bad faith relating to a workers' compensation claim
> requires that the claimant first be entitled to the benefits requested.
> The claimant is not in a contractual relationship with the employer's
> insurer and, therefore, absent entitlement to benefits, a bad faith
> claim cannot be sustained.

<u>Id.</u>   The court "conclude[d] that the circuit court was correct when it ruled

that Hein's bad faith claim against Acuity was premature because at the time

she brought her lawsuit her request for rehabilitation benefits was pending before the Department." Id. at 237.

This court acknowledges the importance of Zuke.  While addressing a statute of limitation defense, the court recognized "that a plaintiff alleging a bad-faith denial of worker's compensation benefits must first bring her worker's compensation claim before the state department of labor." Brennan v. Western National Mutual Ins. Co., 125 F. Supp. 2d 1152, 1155 (D.S.D. 2001) (referencing Zuke, 589 N.W.2d at 930).  The court ruled the statute of limitation had not yet expired because "Plaintiff's claim for bad-faith denial of worker's compensation benefits did not accrue until she had obtained a final judgment from the department of labor." Id.  The court concluded pursuant to the ruling "in Zuke, a plaintiff does not know whether the denial of her worker's compensation benefits was reasonable—and hence whether she has a bad-faith claim—until after worker's compensation proceedings are complete." Id. (referencing Zuke, 589 N.W.2d at 930) (other reference omitted).

Addressing when a claim accrues in a bankruptcy proceeding, the court in Harms v. Cigna Ins. Companies, 421 F. Supp. 2d 1225 (D.S.D. 2006), acknowledged "[i]n a bad faith claim for failure to provide worker's compensation insurance benefits, one of the elements of the bad faith claim is a final judgment in South Dakota worker's compensation proceedings in favor of the claimant." Id. at 1229 (referencing Zuke, 589 N.W.2d at 930).  Based on this Zuke principle, the court held a "claim accrues upon entry of 'final

judgment from the department of labor,' including all appeals, in the worker's compensation proceedings." Id. (citing Brennan, 125 F. Supp. 2d at 1155). See also Lagler v. Zurich American Ins. Co., No. CIV 12-4037, 2012 WL 3264906, at *2 (D.S.D. Aug. 10, 2012) ("It is true that the state courts of South Dakota will not entertain a tort action based on a denial of workers' compensation benefits until the department of labor has determined whether the plaintiff is in fact entitled to such benefits." (referencing Zuke, 589 N.W.2d at 930).

While the court in Lagler was addressing plaintiff's intentional tort claim for the insurance company's failure to pay workers' compensation benefits, the court again acknowledged "any decision on the merits of those claims will depend on whether Lagler is in fact entitled to such benefits." Id. at 2012 WL 3264906, at *3 (referencing Zuke, 589 N.W.2d at 930). "Under South Dakota law, the decision whether a person is entitled to workers' compensation benefits is committed to the jurisdiction of the department of labor and the state courts exercising appellate review." Id. The court concluded:

> [I]t will not decide Lagler's tort claim until state administrative procedures, originating in the department of labor and subject to judicial review in state court, have produced a final determination whether she is entitled to workers' compensation benefits. If the Court were to decide Lagler's tort claim it would risk rendering a decision which is inconsistent with the department of labor's regulation of workers' compensation.

Id. The court acknowledged "a decision by this Court on Lagler's entitlement to benefits would interfere with South Dakota's efforts to establish a coherent

workers' compensation policy by concentrating entitlement issues in the department of labor." Id. "Only after the administrative procedures established under the workers' compensation statutes . . . have produced a decision on Lagler's underlying entitlement to benefits will the Court have an administrative decision it can use in adjudicating Lagler's bad faith claims." Id.

Defendants argue "voluntary payment of benefits is not an admission of liability and there has been no finding that any workers' compensation benefits were actually owed." (Docket 63 at p. 8) (referencing Tiensvold v. Universal Trans, Inc., 464 N.W.2d 820, 825 (S.D. 1991) ("Any statutory interpretation which would penalize an employer who voluntarily makes weekly payments to an injured employee in excess of [the employer's] ultimate liability would certainly discourage voluntary payment by employers and would therefore constitute a disservice to injured workers generally.") (citing Western Casualty and Surety Company v. Adkins, 619 S.W.2d 502 (Ky. App. 1981)). Defendants submit plaintiff has not obtained "an administrative finding holding that Defendants are legally responsible for payment of any medical bill(s)." Id. "Because Plaintiff filed a Notice of Dismissal with Prejudice," defendants assert the South Dakota Department of Labor "is forever barred from adjudicating entitlement to payment of the CT scan under the South Dakota workers' compensation laws." Id. Based on the ruling in Zuke, defendants argue they "are entitled to summary judgment as a matter of law as Plaintiff has not

obtained a final administrative determination holding that she was entitled to payment of the CT scan of the head or any other medical invoice under the South Dakota Workers' Compensation Act."   Id.

Plaintiff argues defendants' position must fail because the parties "reached an agreement in regard to compensation, the Department of Labor had no jurisdiction under SDCL 62-7-12—which means administrative remedies were at an end."   (Docket 70 at p. 22).   Plaintiff submits the notice of dismissal with prejudice "inform[ed] the Department of the agreement" of the parties and "pursuant to SDCL 62-7-5 . . . made the agreement 'enforceable for all purposes.' "   Id. (citing SDCL § 62-7-5).

Plaintiff contends the parties' agreement was final and defendants "failed to reserve any dispute over the validity of [plaintiff's] workers comp [sic] claim." Id. at p. 23.   If defendants "wanted to preserve some issue for dispute," plaintiff argues "it was their burden to preserve the issue by notifying the Department of Labor through the statutorily mandated memorandum of agreement."   Id.

In support of her argument, plaintiff submits defendants' last proposal was to pay her "$3,000 and to maintain their denial of her claim."   Id. Plaintiff rejected this offer.   Id.   She "insisted on payment in full, plus interest[.]"   Id.   Plaintiff contends defendants "acceded to [her] demand and dropped their insistence on maintaining a denial of compensability."   Id.   In plaintiff's view, defendants agreed to pay her claim in full and the Department

of Labor's "jurisdiction lapsed and with it any further administrative remedies."

Id.

Plaintiff argues <u>Hein</u> and <u>Brennan</u> support her position. She submits that in <u>Hein</u> "the Supreme Court meant what it said: After settlement, the worker 'has no further administrative remedies to exhaust.'" <u>Id.</u> at p. 24 (citing <u>Hein</u>, 731 N.W.2d at 237). Plaintiff contends defendants "cite no authority that contradict <u>Hein</u> and the statutes discussed above." <u>Id.</u> at p. 25.

Plaintiff argues defendants' reliance on <u>Brennan</u> is misplaced. She argues "<u>Brennan</u> contradicts [defendants'] broad proposition that a work comp bad faith claim requires a ruling on compensability by the Department of Labor." <u>Id.</u> (referencing <u>Brennan</u>, 125 F. Supp. 2d at 1153-54). Plaintiff submits in <u>Brennan</u> there was neither a settlement of a workers' compensation claim, nor a decision of the Department of Labor but instead the department dismissed the petition for benefits on a technical basis not relevant to this case. <u>Id.</u>

Plaintiff's argument concludes that based on SDCL §§ 62-7-5 and 12 "and pursuant to <u>Zuke</u> and <u>Hein</u>, [Ms. Tovares] has no further administrative remedies to exhaust. . . . [Plaintiff's] bad faith claim is ripe and properly before the Court." <u>Id.</u> at p. 26 (internal quotation marks omitted).

In the alternative, plaintiff submits that if necessary she would seek a declaratory judgment from the Department of Labor. <u>Id.</u> at p. 27. In that circumstance, plaintiff proposes the court should "stay this case" until a

declaratory judgment can be obtained or "dismiss it without prejudice, to allow [her] to pursue those remedies." Id.

In its reply, defendants argue "[t]here has not been an administrative determination that Plaintiff's workers' compensation claim was compensable[.]" (Docket 72 at p. 2). Defendants contend they "did not withdraw any dispute involving Plaintiff's claim." Id. at p. 3. "Absent an administrative finding in Plaintiff's favor or Defendants' withdrawal of dispute and agreement to accept compensability," defendants argue "liability for the dispute has not been established." Id.

In Skjonsberg, the Department of Labor entered an order in plaintiff's favor. Id. at 2019 WL 237328, at *3. When medical bills were still unpaid over two years later, plaintiff filed a "second motion for partial summary judgment . . . seeking payment for her unpaid medical expenses." Id. One month later, the workers' compensation insurance carrier, Praetorian, resolved the medical expenses with the health care providers. Id. The Department of Labor later granted Skjonsberg's motion for a second partial summary judgment. Id. at *4. "The order repeated the Department's conclusions from its first order by stating that Employer and Insurer were responsible for the medical expenses for both of Skjornsberg's injuries." Id.

The South Dakota Supreme Court concluded "no controversy exists or existed before the Department" because the Department's earlier order "had already determined that Skjonsberg's injuries were work-related and that

22

Employer and Insurer were liable to compensate her for her medical expenses." Id. at *7. Based on this conclusion, the court held "[b]ecause Employer and Insurer paid Skjonsberg's medical expenses, the Department lacked jurisdiction to grant summary judgment—the issue of payment was moot before the Department and remains moot before this Court." Id. at *8. The court finds Skjonsberg, 2019 WL 237328, not applicable to the facts in this record.

South Dakota workers' compensation law permits the parties to resolve a claim without a hearing.

> If the employer and employee reach an agreement in regard to the compensation under this title, a memorandum of the agreement shall be filed with the department by the employer or employee. Unless the department within twenty days notifies the employer and employee of its disapproval of the agreement by letter sent to their addresses as given in the memorandum filed, the agreement shall stand as approved and is enforceable for all purposes under the provisions of this title.

SDCL § 62-7-5. "Compromise agreements permitted under SDCL 62-7-5 have the same force and effect as adjudicated awards[.]" Sopko v. C & R Transfer Co., Inc., 575 N.W.2d 225, 229 (S.D. 1998). "If the employer and injured employee . . . fail to reach an agreement in regard to compensation under this title, either party may . . . request a hearing[.]" SDCL § 62-7-12.

The question before the court is whether the notice of dismissal with prejudice constituted a contract, that is, an agreement or a memorandum of agreement. This is a question of law rather than a question of fact. "South

23

Dakota law governs here, and under South Dakota law, contract construction is a question of law that is determined by the court." Mehlbrech v. Acuity, Civ. No. 11-4102, 2012 WL 4718659, at *2 (D.S.D. Oct. 3, 2012) (referencing LaMore Restaurant Group, LLC v. Akers, 748 N.W.2d 756, 761 (S.D. 2008)).

In the Department of Labor proceeding, defendants denied Ms. Tovares' medical bills were incurred as the result of a work-related injury. During the settlement discussion, Attorney Simpson wanted defendants to file an amended answer admitting the bills were compensable under the workers' compensation law. In response to that demand, defendants' attorney countered with a $3,000 offer but insisted they would maintain their denial position. Throughout the remainder of the attorneys' discussions defendants' position never changed and they never agreed to admit the medical bills were compensable under the workers' compensation law. Rather, Attorney Simpson settled by accepting defendants' check and filed the notice of dismissal with prejudice with the Department of Labor. Despite their discussions, there was no oral agreement as to compensability and the notice of dismissal does not contain any acknowledgment of compensability. The attorneys' discussion "fail[s] to comprise a memorandum of agreement." Fredekind v. Trimac Ltd., 566 N.W.2d 148, 152 (S.D. 1997). The notice of dismissal does not "provide the requisite filing necessary to make it binding" on the defendants should later medical bills arise. Id. Had plaintiff intended to insist on an admission or determination of compensability, she should have

rejected defendants' check and requested a hearing pursuant to SDCL § 62-7-12.

The court finds as a matter of law the notice of dismissal is not a binding agreement or a memorandum of agreement which would come within the purpose of SDCL § 62-7-5. The notice of dismissal was not a "[c]ompromise agreement[]" contemplated by § 62-7-5 and it does not "have the same force and effect as adjudicated awards[.]" Sopko, 575 N.W.2d at 229.

Plaintiff's bad faith claim fails because she did not obtain an administrative ruling that she was entitled to benefits under the workers' compensation act. Zuke, 589 N.W.2d at 930. Defendants' motion for summary judgment on count I of plaintiff's complaint is granted.

## II. PLAINTIFF HAS NOT DEMONSTRATED INSURANCE POLICY BENEFITS WERE OWED AND DENIED

Defendants premise their argument on the assertion "that a district court has no legal authority to make the determination that a bill or claim is payable under the South Dakota workers' compensation laws as that determination must be made at the administrative level." (Docket 63 at p. 6) (referencing Zuke, 589 N.W.2d at 930; Hein, 731 N.W.2d at 237). The court already determined that count I of plaintiff's complaint must be dismissed for her failure to secure an adjudication of compensability from the South Dakota Department of Labor. Supra. For that reason, defendants' motion for summary judgment on the basis asserted in this section is denied as moot.

### III. REASONABLE BASIS EXISTED—HEAD INJURY FAIRLY DEBATABLE

Defendants again premise this argument on their challenge that plaintiff failed to secure a determination of compensability from the South Dakota Department of Labor. (Docket 63 at pp. 9-16). For the reasons stated above, defendant's motion for summary judgment asserted in this section is denied as moot.

### IV. GALLAGER DID NOT MAKE ANY MISREPRENTATION

Count II of plaintiff's complaint asserts a cause of action under SDCL § 58-33-5. (Docket 1 at p. 7 ¶¶ 51-58). Plaintiff alleges GBS sent a letter to Ms. Tovares on April 30, 2014, which contained a false representation. Id. ¶ 52. The false representation allegation is premised on the following statement: "We have investigated this claim and found no evidence to support your claim for benefits under South Dakota Worker's Compensation provisions." Id. Plaintiff claims this letter "characterized Plaintiff's accident as 'alleged,' when they knew an actual accident had occurred and had a video to prove it. . . . misrepresented the fact that they had conducted an investigation sufficient to make a determination to deny the claim. . . . [and] misrepresented that they had 'found no evidence to support [her] claim.' " Id. ¶¶ 53-55. Plaintiff alleges "Praetorian is vicariously liable for the conduct of [GBS], and owed a non-delegable duty to Plaintiff to ensure that proper representations were made concerning coverage and benefits." Id. ¶ 58.

Defendants' motion for summary judgment seeks dismissal of count II of plaintiff's complaint. (Docket 63 at pp. 16-20). Defendants' assert "[p]laintiff's allegation that [GBS] made a misrepresentation under SDCL § 58-33-5 fails as a matter of law." Id. at p. 16. Defendants contend "[n]one of the 'facts pled by Plaintiff . . . represent an actionable misrepresentation of policy terms." Id. Defendants submit "[n]o South Dakota case interpreting this provision has extended the scope of the statute to include a determination regarding a factual dispute concerning compensability." Id. at p. 17. Defendants represent to the court that Texas Mutual Ins. Co. v. Ruttiger, 381 S.W.3d 430, 446 (Tex. 2012), supports their position. Id.

In response, plaintiff argues "[a] jury could find that [defendants] violated SDCL 58-33-5, by 'misrepresenting . . . the benefits or advantages promised' by an insurance policy." (Docket 70 at p. 40). Plaintiff submits "[i]t's a jury question whether [defendants'] statements . . . constitute an honest, albeit incorrect misstatement of the available benefits, or if [defendants] made an actionable misrepresentation." Id. at pp. 40-41.

Defendants' reply brief points out plaintiff's argument "cited no legal authority[.]" (Docket 72 at p. 11). Defendants reiterate "[t]he denial of Plaintiff's claim is not an actionable misrepresentation under the plain terms of SDCL 58-33-5." Id.

SDCL § 58-33-5, which plaintiff alleges forms the basis for count II, provides in pertinent part, "[n]o person shall make . . . or cause to be made any

. . . statement misrepresenting the terms of any policy issued . . . or the benefits or advantages promised thereby . . . . Violation of this section is a Class 2 misdemeanor." Id. Chapter 58–33 provides a private right of action for damages for any insured claiming to have been injured by an insurance company's unfair insurance practice. See SDCL § 58–33–46.1 ("Any person who claims to have been damaged by any act or practice declared to be unlawful by this chapter shall be permitted to bring a civil action for the recovery of all actual and consequential damages suffered as a result of such act or practice including reasonable attorneys' fees to be set by the court.").

In Ruttiger, the Texas Supreme Court analyzed a statute captioned "Misrepresentation of Insurance Policy," which provided:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1)    making an untrue statement of material fact;
>
> (2)    failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3)    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. . . .

Ruttiger, 381 S.W.3d at 445 (citing Tex. Ins. Code § 541.061) (bold omitted). The court held "section 541.061 does not specify that it applies in the context of settling claims. . . . [The section] applies to the misrepresentation of an insurance policy, but . . . does not evidence intent that it be applied in regard

28

to settling claims . . . ." Id. at p. 446. The Texas statute in Ruttiger is substantially different from the enforcement scheme of SDCL Chap. 58-33.

As the court noted when denying defendants' Rule 12(b)(1) motion, "[w]hether there was a misrepresentation by denial of entitlement to benefits or a misrepresentation of the benefits to which plaintiff may have been entitled, the issue remains a jury question." Tovares v. Gallagher Bassett Services, Inc., CIV. 16-5051, 2017 WL 4041983, at *9 (D.S.D. September 17, 2017).

"[V]viewed in the light most favorable to the [plaintiff] opposing the motion," the court finds plaintiff has presented "sufficient evidence" to create a jury question. Matsushita Elec. Indus. Co., 475 U.S. at 587. Defendants' motion to dismiss count II of plaintiff's complaint is denied.

## V.     GALLAGHER CANNOT BE HELD LEGALLY LIABLE FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Defendants argue Ms. Tovares "has not alleged [GBS] was a party to the insuring agreement under which Plaintiff sought workers' compensation benefits." (Docket 63 at p. 20). They assert because GBS was only adjusting plaintiff's workers' compensation claim on behalf of Praetorian, GBS "cannot be held liable for breach of the duty of good faith and fair dealing[.]" Id. Defendants argue this conclusion because GBS "had no contractual relationship with Plaintiff, thus it had no special relationship to support a duty of good faith and fair dealing." Id. Defendants contend Gilchrist v. Trail King Industries, Inc., 612 N.W.2d 10 (S.D. 2000), supports its position. Id.

29

Plaintiff argues the court already ruled it was "confident the South Dakota Supreme Court would conclude a third party administrator . . . [has] a duty of good faith and fair dealing with [an employer's] workers' compensation claimants . . . ."   (Docket 70 at p. 42) (citing <u>Fair v. Nash Finch Co.</u>, CIV. 11-5005 (D.S.D. March 25, 2013) (Docket 138 at p. 11).   Plaintiff concludes, "[p]ursuant to <u>Chem-Age</u>[9] and <u>Fair</u>, since [GBS] itself performed all the claim handling functions in this case, if Praetorian breached its duties of good faith through its agent . . . then [GBS] aided and abetted the breach."   <u>Id.</u>

Defendants argue "[n]ationwide, Courts have held that the existence of a special relationship must exist before such a duty can be imposed, and that third party administrators do not hold such a special relationship."   (Docket 72 at p. 12 (referencing <u>Reid v. Ruffin</u>, 469 A.2d 1030, 1033 (Pa. 1983); <u>Walter v. Simmons</u>, 818 P.2d 214, 222 (Az. Ct. App. 1991); <u>Natividad v. Alexsis, Inc.</u>, 875 S.W.2d 695, 697-98 (Tex. 1994); <u>Cary v. United of Omaha Life Ins. Co.</u>, 68 P.3d 462, 466 (Colo. 2003)).

In <u>Fair</u>, the court adopted the magistrate judge's analysis of <u>Scott Wetzel Services, Inc., v. Johnson</u>, 821 P.2d 804 (Colo. 1991), and <u>Cary</u>, 68 P.3d 462. <u>Fair</u>, CIV. 11-5005, Docket 138 at p. 9.   In the report and recommendation, the magistrate judge fully evaluated the factual setting and holdings in

---

[9]<u>Chem-Age Industries, Inc. v. Glover</u>, 652 N.W.2d 756 (S.D. 2002).

<u>Johnson</u> and <u>Cary</u>.  <u>Fair</u>, CIV. 5005, Docket 134 at pp. 47-51.  Regarding

<u>Johnson</u>, the magistrate judge wrote:

> The court noted that "[i]n the absence of an obligation to deal in good faith and fairly," both self-insured employers and independent claims administration services "may create obstacles to payment." . . . "This kind of delaying tactic runs counter to the goals of workers' compensation." . . . Based on this reasoning, the Colorado Supreme Court held that "an independent claims adjusting company, such as Wetzel, acting on behalf of a self-insured employer owes a duty of good faith and fair dealing to an injured employee in investigating and processing a workers' compensation claim even in the absence of contractual privity with the employee."

<u>Fair</u>, CIV. 11-5005, Docket 134 at p. 49 (citing <u>Johnson</u>, 821 P.2d at 812-13).

The magistrate judge addressed <u>Cary</u> with the following comments:

> In <u>Cary</u>, the court noted that the claims administrator "fulfilled virtually all of the functions normally performed by an insurance company in processing claims and determining whether to deliver insurance benefits." . . . The court held that "[w]hen a third-party administrator performs many of the tasks of an insurance company and bears some of the financial risk of loss for the claim, the administrator has a duty of good faith and fair dealing to the insured in the investigation and servicing of the insurance claim."

<u>Id.</u> at p. 51 (citing <u>Cary</u>, 68 P.2d at 468-69).

In <u>Gilchrist v. Trail King Industries, Inc.</u>, 612 N.W.2d 10 (S.D. 2000), the

South Dakota Supreme Court examined the proof required for a third party to

be liable under a bad faith claim.

> Whether an employer's rehabilitation consultant [a third-party administrator] can be held liable to a workers' compensation claimant for bad faith is a question of first impression in South Dakota.  In the insurance context, an insurer's violation of its duty of good faith and fair dealing may give rise to the tort of bad faith . . . .  Analogously, to establish bad faith against a workers'

compensation rehabilitation consultant there must first be a showing that the rehabilitationist owed a duty to the injured worker.

Id. at 15.   The South Dakota Supreme Court concluded "if the worker had been able to establish that the rehabilitation company had caused the worker additional injuries then public policy would dictate that the worker be compensated."   Id. at 16.

In 2002, the South Dakota Supreme Court reaffirmed the responsibility of a third-party for a claimant's damages.   "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Chem-Age Industries, Inc., 652 N.W.2d 773 (citing Restatement (Second) of Torts § 876(b) (1977)).

In Fair the court considered Natividad.   "Without repeating the magistrate judge's analysis of Natividad, the court concludes that the South Dakota Supreme Court logically would look to Colorado law rather than Texas law for guidance on third party administrator bad faith liability."   Fair, CIV. 11-5005, Docket 138 at p. 11.   Based on Gilchrist and Chem-Age Industries, Inc., the court remains "confident the South Dakota Supreme Court would conclude a third party administrator like [GBS] ha[s] a duty of good faith and fair dealing with [Menard's] workers' compensation claimants[.]"   Fair, CIV. 11-5005, Docket 138 at p. 11.

Defendants' motion for summary judgment seeking dismissal of count II of the complaint on the basis asserted in this section is denied.

## VI. PLAINTIFF SUFFERED NO DAMAGES DUE TO DEFENDANTS' CONDUCT

Defendants seek dismissal of plaintiff's complaint asserting Ms. Tovares "suffered no damages as a result of Defendants' conduct." (Docket 63 at p. 20). They submit "damages for emotional distress are recoverable only in 'exceptional cases.' " Id. (citing Kunkel v. United Security Ins. Co. of N.J., 84 S.D. 116, 135 (S.D. 1969)). Defendants' argue "denial of a single medical bill for an objective test to a body part that was not injured in the course and scope of employment does not constitute an 'exceptional case' warranting an award for emotional distress. Thus, the claim of emotional distress damages should be dismissed." Id. at p. 21. Defendants submit "[b]ecause Plaintiff cannot establish she suffered damages due to Defendants' conduct, she fails to meet an essential element to establish her cause of action for breach of the duty of good faith and fair dealing." Id.

Plaintiff resists defendants' motion for summary judgment as to the damages element of her claim. (Docket 70 at pp. 42-43). Plaintiff asserts she suffered the following damages: emotional distress damages when defendants suggested she was lying about her workers' compensation claim; economic damages because she had to borrow money to pay the medical bills which defendants should have paid; and attorney's fees. Id. at p. 42.

Defendants argue plaintiff's damages claim must fail because she did not produce any "documentation of any financial damage for which Plaintiff has

not been compensated. . . . [And there is no] evidence of damage to her credit because of the denial of the medical bill(s)."  (Docket 72 at pp. 12-13).

The court finds plaintiff presented sufficient evidence to defeat defendants' motion for summary judgment based on the issue of damages. Plaintiff testified she had to borrow money to pay the medical bills.   (Docket 67-1 ¶15).   The record establishes she incurred fees with Attorney Simpson in her workers' compensation claim, which fees may also be considered in the misrepresentation claim if plaintiff prevails at trial.   The issue of emotional distress she may have suffered is a jury question.

Defendants' motion for summary judgment seeking dismissal of count II of the complaint on the basis asserted in this section is denied.

## VII   PUNITIVE DAMAGES

Defendants argue they "are entitled to summary judgment as to the punitive damages claim as the evidence does not establish that Defendants acted with malice, actual or implied."   (Docket 63 at p. 21) (referencing Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 698-99 (S.D. 2011) (citing S.D.C.L. § 21-3-2).   Defendants assert "[t]here is no evidence or allegation that Defendants intentionally initiated any conduct with the intent to harm Plaintiff. Because Defendants had a reasonable basis for the denial, Defendants cannot be held liable for breach of the duty of good faith and fair dealing, much less the higher standard of showing Defendants initiated actions seeking to intentionally cause Plaintiff harm."   Id. at p. 22.   They assert "South Dakota law has long held that even mere negligence does not establish that Defendants

34

acted with willful and wanton misconduct warranting imposition of punitive damages." Id. (referencing Baxter v. Campbell, 97 N.W. 386 (S.D. 1903)).

Plaintiff argues she is entitled to punitive damages because "a jury could conclude that [defendants] acted with actual or implied malice toward [Ms. Tovares]. That is, a jury could conclude that [defendants] disregarded [plaintiff's] rights and willfully denied her claim knowing the denial was wrong and could harm [her]." (Docket 70 at p. 43). Plaintiff submits "South Dakota law permits punitive damages on that basis." Id. (referencing Biegler v. American Family, 621 N.W.2d 592, 604-05 (S.D. 2001).

In response, defendants argue they are "entitled to summary judgment as to the punitive damages claim as Plaintiff offered no evidence that Defendants acted with malice." (Docket 72 at p. 13) (referencing Bertelsen, 796 N.W.2d at 698-99). Defendants submit plaintiff's brief "offered no actual evidence of malice." Id.

In South Dakota, the statute "permit[s punitive damages] in the case of a tort arising independent of [a] contract obligation including an action for deceit." Biegler, 621 N.W.2d at 604 (referencing SDCL § 21-3-2). "[SDCL] 21-3-2 allows for punitive damages when there is evidence of 'oppression, fraud, or malice.' " Id. at 605 (references omitted). "Since the statute is in the disjunctive, it [is] only necessary to prove one of the three." Id. "Malice under the statute is either actual or presumed." Id. "A claim for presumed malice can be shown by demonstrating a disregard for the rights of other[s]." Id. (internal references omitted).

The court finds plaintiff presented sufficient evidence by which a jury could conclude the defendants disregarded Ms. Tovares' rights under SDCL § 55-33-5.  Such conduct would constitute presumed malice and may entitle plaintiff to an award of punitive damages.  <u>Biegler</u>, 621 N.W.2d at 605.

Defendants motion for summary judgment as to punitive damages is denied.

Based on the court's rulings above, plaintiff's Rule 56(d) motion seeking to conduct discovery before summary judgment (Docket 68) is denied as moot.

## ORDER

Based on the above analysis, it is

ORDERED that plaintiff's motion for leave to file supplemental authority (Docket 78) is granted.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Docket 62) is granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiff's motion (Docket 68) is denied as moot.

IT IS FURTHER ORDERED that count I of plaintiff's complaint (Docket 1) is dismissed without prejudice.

Dated March 30, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
CHIEF JUDGE