UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ANNIE TOVARES,<br><br>              Plaintiff,<br><br>vs.<br><br>GALLAGHER BASSETT SERVICES, INC., AND PRAETORIAN INSURANCE COMPANY,<br><br>              Defendants. | CIV. 16-5051-JLV<br><br>ORDER |

**INTRODUCTION**

Defendants filed a motion together with a supporting brief to strike plaintiff's expert witness, Elliott Flood. (Dockets 73 & 74). Plaintiff filed a brief together with five exhibits in resistance to defendants' motion. (Dockets 76 & 76-1 through 76-5). Defendants filed a reply brief in support of their motion. (Docket 77). For the reasons stated below, defendants' motion to strike is denied.

**ANALYSIS**

Plaintiff Annie Tovares filed an action against defendants Gallagher Bassett Services, Inc., and Praetorian Insurance Company alleging insurance company bad faith and misrepresentation in violation of South Dakota law. (Docket 1). Defendants filed separate amended answers to plaintiff's complaint.[1] (Dockets 85-86). For purposes of this order, the court will

---

[1]Because the defendants' arguments in the current motion are joined for purposes of this order, the court will refer to them jointly as the "defendants" or "Gallagher-Praetorian."

incorporate the statement of undisputed facts contained in the March 30, 2019, order unless otherwise indicated. (Docket 87 at pp. 4-14).

Rule 702 of the Federal Rules of Evidence governs testimony by expert witnesses and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 703 describes the bases for expert testimony.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid.703.

As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001) (citing Daubert v. Merrell

2

Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993); see also Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757-58 (8th Cir. 2006) (same).

The trial judge "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[2]  Daubert, 509 U.S. at 589.  The subject of an expert's testimony must be scientific, technical, or other specialized knowledge.  Id. at 589-90.  This requirement "establishes a standard of evidentiary reliability."[3]  Id. at 590; see also Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) (noting it is the word "knowledge" in Rule 702 that " 'establishes a standard of evidentiary reliability' ") (citing Daubert, 509 U.S. at 589-90).

Although Daubert deals specifically with expert testimony based on scientific knowledge, the Supreme Court extended the principles in Daubert to all expert testimony.  Kumho, 526 U.S. at 141.  "Proposed testimony must be supported by appropriate validation—i.e., 'good grounds,' based on what is known."  Id.

---

[2] Rule 402 states, in pertinent part, "All relevant evidence is admissible . . . ."  Rule 401 defines "relevant evidence" as evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.

[3] An expert witness, unlike a lay witness, may offer opinions not based on firsthand knowledge or observation.  Daubert, 509 U.S. at 592.  It is presumed the expert's opinion "will have a reliable basis in the knowledge and expertise of his discipline."  Id.

3

Expert evidence is unreliable, and thus inadmissible, "if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." United States v. Bailey, 571 F.3d 791, 803 (8th Cir. 2009); see also United States v. Two Elk, 536 F.3d 890, 904 (8th Cir. 2008) (" '[N]othing in Rule 702, *Daubert*, or its progeny requires that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible.' ") (quoting Kudabeck v. Kroger Co., 338 F.3d 856, 861 (8th Cir. 2003)).

Rule 702 requires expert testimony to be relevant, that is, to " 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " Daubert, 509 U.S. at 591. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 591-92. The issue is one of does the testimony "fit." Id. at 591. " 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Id.

In sum, "[f]aced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."[4] Id. at 592. "This entails a preliminary assessment of whether the reasoning or methodology

---

[4]Rule 104 provides "[t]he court must decide any preliminary questions about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a). "These matters should be established by a preponderance of proof." Daubert, 509 U.S. at 592, n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)).

underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

To make this determination, a district court may evaluate one or all of a number of non-exclusive factors. Those include whether a theory or technique

> (1) can be (and has been) tested;
>
> (2) has been subjected to peer review and publication;
>
> (3) [has a] known or potential error rate . . . and the existence and maintenance of standards controlling the technique's operation . . . ; and
>
> (4) is generally accepted by the scientific community.[5]

Daubert, 509 U.S. at 593-94. A district court may consider all or none of these factors; a court should consider them in cases "where they are reasonable measures of the reliability of expert testimony." Kumho, 526 U.S. at 152. The applicability of these factors will depend on the particular facts of the case. Id. at 150-51.

"[T]he factual basis of an expert's opinion generally relates to the weight a jury ought to accord that opinion. . . . Thus, unless the factual or methodological basis for the testimony is fundamentally unreliable, its

---

[5] " 'General acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence, but the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " United States v. Rodriguez, 581 F.3d 775, 794 (8th Cir. 2009) (quoting Daubert, 509 U.S. at 597). " 'Pertinent evidence based on scientifically valid principles will satisfy those demands.' " Id. (quoting Daubert, 509 U.S. at 597).

5

admission is not an abuse of discretion." Margolies v. McCleary, Inc., 447 F.3d 1115, 1121 (8th Cir. 2006). Challenges to the factual basis for an expert's opinion do not generally affect its admissibility. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." Children's Broadcasting Corp. v. Walt Disney Co., 357 F.3d 860, 865 (8th Cir. 2004) (citing Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting Hose v. Chicago Northwestern Transportation Co., 70 F.3d 968, 974 (8th Cir. 1996)).

The United States Court of Appeals for the Eighth Circuit gives "great latitude" to district courts in determining whether expert testimony satisfies the requirements of Rule 702. Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 573 (8th Cir. 2008) (citing Craftsmen Limousine, Inc. v. Ford Motor Co., 363 F.3d 761, 776 (8th Cir. 2004)). Regardless of what factors are evaluated, the main inquiry is whether the proffered expert's testimony is sufficiently reliable. Id. at 574 (citing Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) ("There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant.")).

Rule 702 requires a flexible approach. Daubert, 509 U.S. at 594. The focus of Rule 702 "must be solely on principles and methodology, not on the

6

conclusions that they generate." Id. at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596; see also Two Elk, 536 F.3d at 903 (A district court " 'must exclude expert testimony *if it is so fundamentally unreliable that it can offer no assistance to the jury*, otherwise, the factual basis of the testimony goes to the weight of the evidence.' ") (emphasis in original) (quoting Larson v. Kempker, 414 F.3d 936, 940-41 (8th Cir. 2005)). "[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Larabee v. M M & L International Corp., 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (citing J. Weinstein & M. Berger, *Weinstein's Evidence*, para. 702[02] at 702–30 (1988)).

The Eighth Circuit reviews under an abuse of discretion standard a district court's ruling admitting expert testimony. United States v. Eagle, 515 F.3d 794, 800 (8th Cir. 2008); see also Kuhmo, 526 U.S. at 152 (A "court of appeals is to apply an abuse-of-discretion standard when it 'review[s] a trial court's decision to admit or exclude expert testimony.' ") (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 138-39 (1997)).

**DEFENDANTS' DAUBERT CHALLENGE TO ELLIOTT FLOOD**

Gallagher-Praetorian moves to strike plaintiff's designated expert, Elliott Flood, a Texas attorney. (Docket 74 at p. 1). Defendants claim "Mr. Flood has never adjusted workers' compensation claims, much less a South Dakota

7

workers' compensation claim."  Id.   They challenge Attorney Flood's testimony for the following reasons:

1. Mr. Flood's opinions on defendants' conduct "are neither helpful, reliable, nor relevant, as the proposed testimony and opinions contain no knowledge, opinions, or statements that the trier-of-fact could not determine for itself, and therefore, his opinions and testimony are not helpful in assisting the trier-of-fact with its duties[.]"  Id. at p. 2;

2. His opinions "lack[] sufficient basis/foundation for his opinions as he has never held a South Dakota law or adjuster's license and has never personally adjusted a South Dakota workers' compensation claim or tried a suit in South Dakota[.]"  Id.; and

3. The witness "attempts to bootstrap his South Dakota opinions by referring to rules of practices in other states.  This is improper in that the ultimate opinion he intends to offer is the impropriety of Defendants' conduct in adjusting a South Dakota claim."  Id.

Defendants ask the court to exclude Attorney Flood's testimony

> because ultimately, his opinions and testimony will not assist the trier-of-fact in reaching its conclusions in this matter.  His testimony is neither reliable nor relevant under Federal Rule of Evidence 702.  It is anticipated his testimony provides legal conclusions and interpretations of both statutes and common law legal principles, which intrude upon the exclusive province of this Court.  Finally, Mr. Flood's opinions are based on the subjective beliefs of Plaintiff, which is improper expert testimony.

Id. at pp. 2-3.

Gallagher-Praetorian argue "Mr. Flood's opinions and testimony are no more than his interpretation of [South Dakota law]."  Id. at p. 7.   Defendants contend the witness' "opinion of what the law is cannot replace what this Court

8

determines the law to be, and therefore cannot be helpful, reliable, or relevant to the jury's ultimate determinations." Id.

Defendants submit "Attorney Flood's opinions are based on Plaintiff's subjective beliefs, [and therefore], the testimony is inadmissible." Id. at p. 8. By way of example, defendants point to Attorney Flood's "conclusion that the delay of the inevitable resulted in an unreasonably delayed payment of nearly one year." Id. (internal reference not provided by defendants). Defendants claim this statement illustrates that Attorney Flood is stating "a party's subjective belief[,]" and not "whether Defendants met the standard indicated in South Dakota statute[.]" Id.

Finally, Gallagher-Praetorian ask the court to strike Attorney Flood's testimony because he "lists eight 'findings' in his report[, but] [t]here is no basis disclosed for any of those findings." Id. at p. 8. Defendants contend those findings "are no more than statements of subjective opinion unsupported by facts, disclosed standards or other disclosed evidence." Id. Defendants acknowledge that while Attorney Flood "states . . . that there were 'deviations from industry customs, practices and standards,' these alleged customs, practices, and standards are not identified so that Defendants would be on notice of what alleged proof they would need [to] meet at the time of trial." Id.

Plaintiff opposes defendants' motion to strike Attorney Flood. (Docket 76). In support of her argument, plaintiff filed Mr. Flood's preliminary report

9

dated February 22, 2018.  (Docket 76-1 at pp. 1-15).  Attached to Attorney Flood's report are the following appendices:

- A. A summary of his statement of qualifications and curriculum vitae ("CV").  Id. at pp. 17-20;

- B. A statement of his expert testimony at depositions and trials. Id. at pp. 21-35;

- C. An explanation of the insurance business.  Id. at pp. 36-46;

- D. An outline of insurance claims standards and claims adjusters' duties.  Id. at pp. 47-72; and

- E. A summary of the fundamental law of workers' compensation;  Id. at pp. 73-76

Plaintiff argues defendants failed to mention that Attorney Flood "served 14 years as Vice President of Texas Mutual Insurance[6] . . . [his] licensing as a claim adjuster, a [Certified Public Accountant] CPA, [an] auditor, [a] fraud investigator, his role in overseeing Texas Mutual's compliance with industry standards and legal requirements, or his role in testifying to those standards as a company representative."  (Docket 76 at p. 3) (references to Attorney Flood's CV omitted).

In response to defendants' argument Attorney Flood will inappropriately be expressing legal conclusions, plaintiff presents the following declaration from Attorney Flood's report:

---

[6]Plaintiff asserts Texas Mutual Insurance was "the largest worker's compensation insurer in Texas."  (Docket 76 at p. 3) (internal reference omitted).

10

> Explaining insurance customs, practices and standards may require some mention of legal concepts underlying the business practices of insurers–legal concepts widely taught in the industry–however, nothing I say should be construed as a legal opinion, that being the exclusive province of a court. If I state that an insurer "must" do something, this is another way of saying that the insurer must do that thing in order to be following the normal customs, practices and standards of the insurance business.

Id. at p. 4 (referencing Docket 76-1 at p. 3). Plaintiff also submits Attorney Flood's report contains no assertion he intends to testify at trial that defendants' conduct "constituted an alleged violation of the duty of good faith and fair dealing." Id. (internal reference omitted). Plaintiff's counsel assures the court he "has tried numerous bad faith cases to juries, has never offered such testimony from an expert, and doesn't plan to start now." Id.

In response to defendants' objection that Attorney Flood's report indicates he may develop additional opinions after defendants complete producing discovery, plaintiff contends the claim file was produced by defendants "over a year and a half after the case was filed, and after Flood wrote his report." Id. at p. 5 (internal reference omitted). Plaintiff represents to the court the "report is dated February 22, 2018. [Defendants] did not produce their claim file or claim notes until six days later, on February 28, 2018." Id. at p. 8 (internal reference omitted). Plaintiff submits an order of the court "stayed expert discovery in this case, but at the close of discovery, Flood will supplement his report in light of the full discovery." Id.

11

In response to defendants' claim Attorney Flood is not qualified to express expert opinions, Attorney Flood addresses this issue in his report. Attorney Flood's report states:

Claim Handling Standards in South Dakota

I have researched the South Dakota claim handling standards and have been qualified by a South Dakota court to testify on this topic (see Appendix B, p. 1: "*Johnson v UPS and Liberty Mutual.*") From my examination of this claim and pertinent South Dakota materials, I have determined that South Dakota generally follows, to the extent discussed herein, national claim handling standards in discussed Appendices C, D and E. Also, from my review of the limited records in this case, I detected nothing that would impact or change these national claim handling standards. It also bears mentioning that South Dakota, like most, if not all, states has an unfair claims practices act based on the national Model Unfair Claims Settlement Practices Act. An insurer must know and follow claim handling laws of each state in which it operates.

Id. at p. 10 (referencing Docket 76-1 at p. 8) (italics omitted). Specifically addressing worker's compensation claims in South Dakota, plaintiff submits Attorney Flood writes: "In the course of my work on this and other files, I have examined South Dakota workers' compensation benefits and practices, and find that they are substantially similar to many states. I have conducted detailed examinations of the insurance laws in over 25 states in the course of my career and as a consultant." Id. at p. 11 (referencing Docket 76-1 at p 8).

Plaintiff argues Attorney Flood's testimony will be helpful to the jury because "what lay jury knows about 'the role of a third-party administrator and workers' compensation carriers'?" Id. at p. 12. Plaintiff submits "[t]he jury will need help with those topics, and Flood's deep experience in the industry

enables him to give testimony that will assist the jury. That's why courts routinely allow expert testimony on the topics of insurance and workers compensation . . . ." Id. at pp. 12-13. Plaintiff argues her expert "discusses the industry standards for reasonable claim handling." Id. at p. 13 (referencing Docket 76-1 at p. 14).

Plaintiff represents to the court Attorney Flood will not usurp the court's role in giving the jury the law of the case. She submits "[i]n an insurance bad faith case, an expert may properly testify that industry standards require adjusters to know (or be able to find) applicable claim handling laws. As Flood has done here, a properly cautious expert can explain these points in the course of explaining industry standards without presuming to put on a judge's robe." Id. at p. 16.

In their reply brief, Gallagher-Praetorian argue plaintiff's witness "does not provide 'expert' opinions. His proposed opinions are comprised of nothing more than his guesses or personal opinions without disclosure of the underlying standards, principles, or basis." (Docket 77 at p. 1). Defendants contend:

> Mr. Flood is not a medical doctor and cannot testify as to medical necessity or the appropriateness of the treatment Plaintiff sought. He cannot establish whether the medical bill(s) in issue should have been paid. Mr. Flood is not disclosed as a medical professional and is not qualified to make opinions regarding causation and reasonable and necessary medical treatment. These facts do not require a discussion of industry standards or terminology in the insurance industry.

Id. at p. 2.  Defendants submit the witness' "testimony and opinions cannot assist or help the trier-of-fact in the discharge of its duties because the opinions he offers regarding the reasonableness of the investigation, can all be deduced by the trier of fact."  Id. at p. 3.

Gallagher-Praetorian argue "[a]s an alleged industry witness, Mr. Flood should fully be aware of any industry standard that applies to the insurance industry.  Yet, he failed to identify any such standards."  Id. at p. 5.  For that reason, defendants contend "Plaintiff either failed to provide a compete [sic] disclosure or has named a witness unqualified to testify as to those standards and by extension unqualified to testify as to any violation of such undisclosed standards."  Id.

While defendants agree plaintiff did not receive the claims file until after Attorney Flood's report was completed, they argue "the expert should not be allowed to eventually supplement his opinions when the complete claims file was in Plaintiff's possession eight months ago."  Id. at p. 6.  Based on that argument, Gallagher-Praetorian "move to exclude any additional undisclosed opinions of Mr. Flood as such opinions would be untimely."  Id.

Defendants argue plaintiff's argument that expert discovery was stayed by order of the court is erroneous.  Id. at p. 7 (referencing Docket 56) ("Discovery shall proceed as to the facts and circumstances of Plaintiff's specific claim, the individuals involved with processing her claim, how it was investigated, and any facts relating to its denial and ultimate payment.").

14

Defendants contend Attorney Flood is required to supplement his opinions. Id.

Finally, defendants argue Attorney Flood is not qualified to be an expert because he has no experience "relative to South Dakota workers' compensation claims handling." Id. Defendants contend plaintiff failed to list in her Rule 26 disclosures any information which would suggest he "had a prior South Dakota 'expert' retention." Id. at p. 7 n.7.

The June 20, 2018, order of United States Magistrate Judge Daneta Wollmann did not specifically state expert reports had to be supplemented by a date certain or a date following any specific event or production of discovery. See Docket 56. Rather, consistent with defendants' request, discovery was intended to proceed in the first phase "focus[ed] on Plaintiff's claim for workers' compensation and Defendants' claim handling thereof, with summary judgment briefing to follow regarding the appropriate bad faith legal standard that applies." See Dockets 46. The court's denial of plaintiff's objection to bifurcation of discovery did not change the direction or timing of discovery. See Dockets 59 & 75.

Expert disclosures and supplementation of expert reports were addressed in the September 28, 2017, order. (Docket 36). "The identity of and reports from retained experts under Rule 26(a)(2) shall be due from plaintiff by March 1, 2018, and from defendants by May 1, 2018; any

supplementations under Rule 26(e) shall be due thirty (30) days prior to trial. Any expert not so designated will not be permitted to testify at trial." Id. ¶ 7 (bold omitted). Those deadlines were extended in the June 14, 2019, order, which moved the deadline for plaintiff's disclosures to September 2, 2019, and defendants' disclosures to October 16, 2019. See Docket 89 ¶ 1. Supplementing expert reports was still controlled by Docket 36. See Docket 89 at p. 2. Despite defendants' objection, plaintiff is not required to supplement Attorney Flood's report until on or before 30 days prior to trial. See Docket 36 ¶ 7.

Attorney Flood's report is dated February 22, 2018. See Docket 76-1 at p. 2. Presumably plaintiff disclosed the report prior to the original deadline for production, March 1, 2018, as defendants' have not moved to strike Attorney Flood's report for failure to comply with the disclosure order. Defendants served their designation of experts on plaintiff on April 30, 2018. (Docket 76-4 at p. 9). This was in compliance with the original deadline for production, May 1, 2018. See Docket 36 ¶ 7.

It is evident Attorney Flood is both educated and experienced in the field of workers' compensation claims procedures. He is qualified to speak to the national standards by which claims adjusters are required to perform. In that same light, he is qualified to examine defendants' employees' actions and decisions in handling Ms. Tovares' claim and to testify as to whether the defendants' employees complied with the national standards. Attorney Flood

16

is not required to hold a South Dakota attorney's license or process a South Dakota worker's compensation claim to qualify as an expert witness in this case.

Plaintiff has shown by a preponderance of the evidence Attorney Flood's anticipated expert testimony is admissible at trial. Lauzon, 270 F.3d at 686; see also Larabee, 896 F.2d 1116 n.6 ("[D]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility.") (internal citations omitted).

Based on the court's experiences, the court finds workers' compensation claims adjusting is a procedure "an average juror is unlikely to have sufficient knowledge or experience to form an opinion without expert guidance[.]" Reedy v. White Consolidated Industries, Inc., 890 F. Supp. 1417, 1447 (N.D. Iowa 1995) (internal references omitted). The court finds under Rule 702 that Attorney Flood's testimony will " 'assist the trier of fact to understand the evidence or to determine a fact in issue.' " Daubert, 509 U.S. at 591.

Defendants' challenges to Attorney Flood's findings and conclusions are best left for the jury to resolve. Challenges to the factual basis for an expert's opinion do not generally affect its admissibility. "[T]he factual basis of an expert's opinion generally relates to the weight a jury ought to accord that opinion. . . ." Margolies, 447 F.3d at 1121. "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-

examination." Children's Broadcasting Corp., 357 F.3d at 865. "Vigorous cross-examination" and "presentation of contrary evidence" will permit the jury to determine whether to adopt Mr. Flood's testimony or what weight to give to it. Daubert, 509 U.S. at 596. This is "the traditional and appropriate means of attacking shaky but admissible evidence." Id. Whether Attorney Flood's conclusions are accurate or should be accepted by the jury may be tested by vigorous cross-examination. Moran v. Ford Motor Co., 476 F.2d 289, 291 (8th Cir. 1973).

The court finds Attorney Flood's proposed testimony qualifies under Fed. R. Evid. 702. Defendants' motion is denied.

## ORDER

Based on the above analysis, it is

ORDERED that defendants' Daubert motion challenging the testimony of Attorney Elliott Flood (Docket 73) is denied.

IT IS FURTHER ORDERED that defendants' motion to exclude any additional opinions of Attorney Flood as untimely (Docket 77 at p. 6) is denied without prejudice.

Dated September 13, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE