UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| ANNIE TOVARES,<br><br>                    Plaintiff,<br><br>     vs.<br><br>GALLAGHER BASSETT SERVICES,<br>INC., PRAETORIAN INSURANCE<br>COMPANY,<br><br>                    Defendants. | 5:16-CV-05051-JLV<br><br><br>ORDER GRANTING MOTION TO<br>COMPEL (DOC. 91); GRANTING<br>MOTION TO EXTEND (DOC. 93);<br>GRANTING MOTION FOR<br>PROTECTIVE ORDER (DOC. 95) |

Pending is Plaintiff's Second Motion to Compel (Doc. 91); Motion to Extend the Deadline for Discovery (Doc. 93); and Motion for Protective Order (Doc. 95).  United States District Judge Jeffrey L. Viken referred Plaintiff's motions to this Magistrate Judge for determination pursuant to 28 U.S.C. § 636.  (Doc. 102).

## **FACTUAL BACKGROUND**

The pending action is a diversity jurisdiction claim arising from a fall Plaintiff endured while working at Menards, Inc. in Rapid City, South Dakota.[1] After incurring medical costs following her fall, Plaintiff submitted a worker's compensation claim seeking reimbursement for medical expenses.  Defendant Praetorian Insurance Company ("Praetorian") had issued a policy of worker's compensation insurance to Menards, Inc.  Co-Defendant Gallagher Bassett

---

[1] The facts of this case are summarized from the undisputed material fact portion of Judge Viken's Order granting in part and denying in part summary judgment.  (Doc. 87).

Services, Inc. ("GBS") is the claim administrator which handled Plaintiff's claim for Praetorian.  After being denied worker's compensation benefits, Plaintiff filed a petition for a hearing with the South Dakota Department of Labor. Following a settlement of $3,225.12, Plaintiff moved to dismiss her petition with prejudice.

Subsequently, Plaintiff filed the pending federal action, alleging one count of Bad Faith and one count of Misrepresentation.  Following a Motion for Summary Judgment by Defendants, the only remaining count of Plaintiff's lawsuit is for misrepresentation pursuant to South Dakota Codified Law § 58-33-5.  (Doc. 87).  As part of this claim, Plaintiff seeks punitive damages pursuant to South Dakota Codified Law § 21-3-2.  Now pending is Plaintiff's Motion to Compel (Doc. 91); Motion to Extend Deadline for Discovery (Doc. 93); and Motion for Protective Order (Doc. 95).  To ensure the speedy and just resolution of these motions, this court set a hearing which was held on January 7, 2020.  (Doc. 104).  Prior to the hearing, the parties were ordered to jointly complete a discovery chart to aid the court in efficiently addressing the issues and arguments subject to the pending motions.  The day before the scheduled hearing, the parties filed a combined total of ninety-three pages of briefing and exhibits.  (Docs. 108, 109, 110, 111, 112).

At the hearing, the parties were warned that their briefing regarding the pending motions had been in blatant violation of D.S.D. Civ. LR 7.1's page limit of twenty-five pages for briefs and any attachments.  Likewise, the court informed the parties that due to the last-minute nature of their filings, coupled

with the large volume of pages filed in violation of the Local Rules, the court could not be expected to be adequately prepared for the hearing.  Accordingly, the court concluded the hearing and informed the parties that the court would either schedule a subsequent hearing at a later date or rule on the motions in a written order.  Before concluding the hearing, the court did, however, invite the parties to submit briefs of no more than five pages in length to address the issue of whether case law permitted the discovery Plaintiff seeks in connection with a misrepresentation claim.[2]  See (Docs. 119, 120).

## DISCUSSION

### I.   Motion to Compel

#### a.  Scope of Discovery

The scope of discovery for civil cases is set forth in Federal Rule of Civil Procedure 26(b)(1) which provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-

_____

[2] At the hearing, the court noted Plaintiff's requests would clearly be discoverable pursuant to a bad faith claim, but the parties had not addressed in the briefing whether the materials would still be discoverable in terms of the remaining misrepresentation claim.

37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)).

"A party seeking discovery is merely required to make a threshold showing of relevance, which is more relaxed than the showing required for relevance in the context of admissibility." Klynsma v. Hydradyne, LLC, No. CIV. 13-5016-JLV, 2015 WL 5773703, *16 (D.S.D. Sept. 30, 2015) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978)).  "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc., 437 U.S. at 351).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." E.E.O.C., 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972).

The party resisting discovery must show specifically how each request is irrelevant or unduly burdensome.  Klynsma, 2015 WL 5773703 at *16 (citing

4

St Paul Reinsurance Co., 198 F.R.D. at 512).  The court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2).  See also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Because she is seeking punitive damages, Plaintiff must show that Defendants acted with malice, actual or implied.  See Bertelsen v. Allstate Ins. Co., 2011 S.D. 13, ¶ 39, 796 N.W.2d 685, 698–99 (citing SDCL § 21–3–2). "Actual malice is a positive state of mind, evidenced by a positive desire and intention to injure one another, actuated by hatred or ill-will towards that person." Bertelsen, ¶ 40, 796 N.W.2d at 699 (quoting Biegler v. Am. Family Mut. Ins. Co., 2001 S.D. 13, ¶ 45, 621 N.W.2d 592, 605).  Implied malice can be inferred or imputed by law.  Bertelsen, ¶ 40, 796 N.W.2d at 699.  "Presumed malice may not 'be motivated by hatred or ill-will but is present when a person acts willfully or wantonly to the injury of others.'" Id. (quoting Biegler, ¶ 45, 621 N.W.2d at 605).

When a party seeks punitive damages, the jury must evaluate "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity

between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." Roth v. Farner–Bocken Co., 2003 S.D. 80, ¶ 46, 667 N.W.2d 651, 665–66 (citing State Farm v. Campbell, 538 U.S. 408, 418 (2003)).  The jury may consider evidence that the harm caused to a plaintiff was a company policy or practice.  Roth, ¶ 65, 667 N.W.2d at 669.  With this claim in mind, the court turns to the instant discovery disputes.

### b.  Requests for Production

Plaintiff seeks to compel responses to the following eighteen document requests.[3]  The court will address each, in turn.  Defendants repeatedly object to the individual requests on the basis of relevance, arguing the specific requests have no relevance as to whether the letter dated on April 30, 2014, was a misrepresentation under SDCL § 58-33-5.  (Ex. 1 at p. 1).  Additionally, Defendants assert Plaintiff's arguments are premised on the scope of discovery for a bad faith cause of action.  Id.  Because the count alleging bad faith was dismissed by the District Judge, Defendants argue the discovery sought is irrelevant to an intentional misrepresentation cause of action.  Id.  See also (Doc. 87).

---

[3] Discovery requests at issue, as well as the parties' respective positions, are derived from the parties' completion of the joint discovery chart attached to this Order as Exhibit 1. Furthermore, the court does not refer to the requests numerically one through eighteen, rather, the court has kept the original request numbers to correspond with Plaintiff's Motion and Exhibit 1.

The parties each submitted a five-page brief to address whether case law permits the scope of discovery sought by Plaintiff under a misrepresentation claim.  (Docs. 119, 120).  Both parties assert that there exists no case law addressing discovery as it pertains to claims *solely* under SDCL § 58-33-55, which governs the misrepresentation claim.  Likewise, the court conducted independent research and could not find any case law specifically discussing the requested scope of discovery as it pertained only to the misrepresentation claim.

Plaintiff, however, asserts that SDCL § 58-33-46.1 (the statute which provides a civil cause of action for actual and consequential damages resulting from a misrepresentation under SDCL § 58-33-5) makes Defendants' practices relevant.  (Doc. 120 at p. 2).  The relevant statute provides as follows:

> Any person who claims to have been damaged by any *act or practice* declared to be unlawful by this chapter shall be permitted to bring a civil action for the recovery of all actual and consequential damages suffered as a result of such *act or practice* including reasonable attorneys' fees to be set by the court.

SDCL § 58-33-46.1 (emphasis added).  Furthermore, Plaintiff argues discovery is proper because she is seeking punitive damages pursuant to SDCL § 21-3-2. (Doc. 120 at p. 3).

Defendants further assert that Plaintiff is limited to actual and consequential damages under SDCL § 58-33-46.1 and that she is not entitled to punitive damages as a matter of law.  (Doc. 119 at p. 3).  However, in denying this argument from Defendants' Second Motion for Summary Judgment, United States District Judge Jeffrey L. Viken held the following:

Defendants' second assertion is that the damages recoverable for a violation of § 58-33-5 are limited to the statutory damages articulated in SDCL § 58-33-46.1.  They assert those are "actual and consequential damages" and "reasonable attorneys' fees."  SDCL § 58-33-46.1. . . .  Defendants ignore the clear language of SDCL § 21-3-2, which permits punitive damages "in addition to the actual damage[.]"  Id. (emphasis added).  Nothing in § 58-33-46.1 declares the damages available by that section are the exclusive damages available.  Plus, it is clear that § 21-3-2 contemplates punitive damages may be awarded in addition to other statutory, actual damages.  The court previously held Ms. Tovares may be entitled to punitive damages for defendants' conduct in disregarding plaintiff's rights under SDCL § 58-33-5.  (Docket 87 at p. 36).  Nothing in defendants' second motion for summary judgment changes the court's earlier ruling.  Defendants' second motion for summary judgment on punitive damages is denied.

(Doc. 130 at p. 24-25).  Accordingly, this court need not consider whether any of Plaintiff's discovery requests are permitted solely under a claim of misrepresentation pursuant to SDCL § 58-33-46.1, but rather, whether the discovery is permissible under a claim of misrepresentation *or* as it relates to a claim of punitive damages.  Any objections Defendants make to the individual requests on the basis that they cannot be considered in terms of punitive damages are, therefore, overruled.

Plaintiff's requests can best be categorized into the following nine categories: (i) Personnel Files; (ii) Training, Education, Information, and Presentations; (iii) Marketing; (iv) Compensation and Incentives; (v) Measures of Performance and Goals; (vi) Worker's Compensation Calculations; (vii) Previous Litigation; (viii) Financial Reports; and (ix) Policies Issued to Menards.  The court will address each category, in turn.

### i.  Personnel Files

### Request No. 2

> Personnel files of claims staff in this case, defined to include persons directly involved in handling Plaintiff's claim and supervisors and managers in the chain of command up to the head of the department.

(Ex. 1 at p. 1).

Plaintiff asserts the request is necessary to prove the following: how the company evaluates claim handlers, how it wants claims handled, and incentives and motivations the company gives claims personnel.  Id. Furthermore, Plaintiff asserts the chain of command files are relevant to the intentions of management.  Id.

Defendants respond that the request is irrelevant and further cite to concerns about the confidential nature and privacy rights surrounding personnel files.  (Ex. 1 at p. 1).

Personnel files are relevant and discoverable as it pertains to a claim for punitive damages.  See Anspach v. United of Omaha Life Ins. Co., No. CIV. 10-5080-JLV, 2011 WL 3862267, at *9 (D.S.D. Aug. 31, 2011) ("Personnel files may reveal whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling.  This is certainly relevant to [Plaintiff's] . . . punitive damages claims.").  As it pertains to Defendants' argument that the personnel files involve confidential information, the court is satisfied that such information will be adequately protected by entry of a Protective Order.  See

*infra* Section III.  Accordingly, the court grants the Motion to Compel as it pertains to Request No. 2.

### ii.  Training, Education, Information, and Presentations

#### Request No. 3

Documents that identify training/educational materials made available to claims staff regarding the handling of worker's compensation claims.

#### Request No. 18

Documents made available to claims staff that guide, direct or inform how they handle claims.

#### Request No. 30

Newsletters, bulletins, blast e-mails or other documents created by Defendants and made accessible to claims staff in this case regarding news or commentary about Defendants.  Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.

#### Request No. 31

All transcripts, video or audio recordings, power point presentations or other materials relating to presentations or speeches claims staff in this case have given regarding insurance.

(Ex. 1 at p. 3, 14, 31, 33).

Plaintiff asserts the requests are relevant to reveal Defendants' company policies and culture as well as how claims staff were trained to determine benefits.  Id. at p. 3, 14, 31, 33.

Defendants object to the request, claiming it is irrelevant and overly broad by not being limited to South Dakota.  Id.

Like personnel files, training and educational materials are discoverable, as they may shed light on punitive damages.  For example, the training and

10

educational materials made available to claims staff may demonstrate malice if employees were acting willfully or wantonly to the injury of others.  See Bertelsen, ¶ 39, 796 N.W.2d at 698–99 (internal quotation omitted) ("Presumed malice may not be motivated by hatred or ill-will but is present when a person acts willfully or wantonly to the injury of others.").  Similarly, training and educational materials are relevant and may lead to the discovery of admissible evidence concerning the degree of reprehensibility of Defendants' alleged misconduct.  See Roth, ¶ 46, 667 N.W.2d at 665–66 (internal citation omitted) (noting the degree of reprehensibility of the conduct as one of the three factors a jury must consider when awarding punitive damages).

Further, Defendants cite to State Farm for the proposition that "the Supreme Court has cautioned that evidence of a company's practices which are relevant to punitive damages should be limited to evidence of practices in the same state as the plaintiff."  (Ex. 1 at p. 7) (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)).  However, the Supreme Court, in State Farm actually held the following:

> Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the State where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff.  A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred.

State Farm Mut. Auto. Ins. Co., 538 U.S. at 422.  At this stage in the proceedings, the court is not concerned with admissibility of evidence or instructions for a jury to consider.  Because out of state conduct regarding

11

training and educational materials may be probative in determining the
deliberateness of Defendants' actions regarding conduct that occurred in South
Dakota, it is discoverable for purposes of punitive damages.  Accordingly, the
court grants the Motion to Compel as it pertains to Request Nos. 3, 18, 30, 31.

### iii.  Marketing

### Request No. 8

> Documents produced by or for GBS for purposes of marketing its
> services to worker's compensation insurance.  Plaintiff stipulates the
> request is limited to documents that were received by Praetorian or
> created or modified from January 1, 2012 to the present.

(Ex. 1 at p. 8).

Plaintiff asserts the request is relevant to reveal Defendants' intent to
reduce claim payouts and to demonstrate a company plan as it pertains to
punitive damages.  Id.

Defendants object on the ground of relevance, unduly burdensome,
annoyance, harassment, undue expense, and proprietary information.  Id.
Again, Defendants cite to State Farm for the proposition that discovery must be
limited to South Dakota.

This court has already addressed the latter argument, and therefore,
overrules that objection.  The court furthermore overrules Defendants'
boilerplate objections on the grounds of discovery being unduly burdensome,
an annoyance, harassing, or an undue expense.  See O'Daniel v. Hartford Life
Ins. Co., No. CIV. 11-5088-JLV, 2013 WL 164225, at *3 (D.S.D. Jan. 15, 2013)
(internal quotations omitted) ("[B]oilerplate objections are unacceptable.  The
party resisting discovery must show specifically how each interrogatory or

request for production is not relevant or how each question is overly broad, burdensome or oppressive."). Furthermore, the court is satisfied that any proprietary information will be properly protected by the entry of a Protective Order. See *infra* Section III.

As it pertains to relevance, Plaintiff asserts marketing materials already located demonstrate GBS "bragging that its clients enjoy lower claim payouts than the rest of the industry." (Ex. 1 at p. 8). Defendants responds that "[w]hether or not [GBS] touts lower claim payouts in marketing materials is irrelevant" as to the misrepresentation claim. Id. However, as noted *supra*, misrepresentation is not this court's only consideration. Rather, the marketing materials are relevant as it pertains to punitive damages. If marketing materials exist that demonstrate GBS touting lower claim payouts, such evidence is relevant as it pertains to Plaintiff's burden in demonstrating Defendants acted willfully or wantonly in denying worker's compensation benefits. Accordingly, the court grants the Motion to Compel as it pertains to Request No. 8.

### iv. Compensation and Incentives

#### Request No. 12

Documents regarding compensation or incentive plans or programs for claims staff in this case. Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.

#### Request No. 14

Documents indicating amounts paid in claims may be considered in determining compensation to claims staff (i.e. bonuses). Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.

13

**Request No. 15**

Documents showing compensation paid to claims staff in this case from January 1, 2010 to present.  Plaintiff stipulates the request is limited to documents from January 1, 2010 to present.

**Request No. 23**

Documents referring to contests, games or prizes relating to performance of claims staff in this case.  Plaintiff stipulates the request is limited to documents created from January 1, 2012 to present.

(Ex. 1 at p. 10, 11, 13, 23).

Plaintiff asserts the requests are relevant to reveal how the compensation system provides motivation or incentives to reduce claim payouts.  Id. at p. 10-11, 13, 23.

Defendants object that the claim staff's salary has no relevance as to whether the April 30, 2014 letter was a misrepresentation.  Id.  Further, Defendants state the request is privileged and of a proprietary nature. Defendants also raises the following, additional objections: vague, ambiguous, overbroad, and not reasonable in scope.  Id. at p. 10-11, 13.

Defendants' boilerplate objections to vague, ambiguous, overbroad, and not reasonable in scope are overruled.  See O'Daniel, No. CIV. 11-5088-JLV, 2013 WL 164225, at *3 (D.S.D. Jan. 15, 2013).  Furthermore, the court is satisfied sensitive information subject to the request will be adequately protected by the entry of a Protective Order.  See infra Section III.  As it pertains to relevance, compensation or incentive plans or programs for claims staff in this case are relevant to the issue of punitive damages.  See Anspach, No. CIV. 10-5080-JLV, 2011 WL 3862267, at *9 (D.S.D. Aug. 31, 2011)

14

(holding that "whether a particular employee was rewarded financially for denying a certain number or percentage of claims or achieving a particular outcome with regard to claims handling . . . is certainly relevant to [Plaintiff's] . . . punitive damages claims").  Accordingly, the court grants the Motion to Compel as it pertains to Request Nos. 12, 14, 15, and 23.

### v.  Measures of Performance and Goals

#### Request No. 20

Documents analyzing or discussing performance of claims department's handling of worker's compensation claims.  Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.  Plaintiff further stipulates that the request excludes documents that solely concern the handling of a particular claim other than Plaintiff's.

#### Request No. 21

Documents regarding goals, targets or objectives for claims staff in this case or for worker's compensation claims in general.  Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.  Plaintiff further stipulates that the Request excludes documents that solely concern the handling of a particular claim other than Plaintiff's and documents related only to efforts to save on non-allocated loss adjustment expenses (i.e. office supplies and other general overhead).

(Ex. 1 at p. 15-16, 17-18).

Plaintiff asserts the requests are relevant to reveal management's tracking of claim outcomes and payouts as well as intent and motive to reduce claim payouts.  Id. at p. 15, 17.

Defendants object to the requests, asserting the requests are irrelevant as to the misrepresentation claim.  Id. at p. 15.  Defendants further assert complying with Request No. 20 would take 2,981,628.6 hours at an expense of

15

$74,540,715.  Id. at p. 15-16.  Additionally, Defendants claim they answered "none" and raised the following objections: overbroad, vague, ambiguous, not limited to South Dakota claims, outside time period of Plaintiff's claim, and attorney-client and work product privilege.  Id. at p. 16.

Plaintiff replies that Defendants' "none" response is false because Defendants have referenced "carrier audit scores" of GBS's performance and "Claim Scorecards/Outcomes."  Id. at p. 15.  Plaintiff further replies that Defendants' estimation of time and expense applies to manually reviewing every single GBS claim file during the relevant time period.  Id. at p. 16. Plaintiff has stipulated that the request excludes documents that solely concern the handling of a particular claim other than Plaintiff's.  Id.

As it pertains to Request No. 21, Defendants object stating they have no documentation of goals, targets and objectives related to Plaintiff's claim.  Id. at p. 17.  Defendants further object to relevance and privilege.  Id. at p. 18.

The court has already addressed Defendants' objections regarding relevance.  Misrepresentation is not this only court's consideration, as discovery related to punitive damages is also relevant.  See Lyon v. Bankers Life & Cas. Co., No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (D.S.D. Jan. 14, 2011) (emphasis added) (granting a motion to compel for "[a]ny and all copies of documents referring to *goals, targets*, or *objectives* established for claim payments" in a case involving punitive damages).  The objection is overruled.  Additionally, the court finds the time period for the request to be

16

permissible.  See <u>Lyon</u>, No. CIV. 09-5070-JLV, 2011 WL 124629, at *10
(providing discovery for goals, targets, and objectives for a ten-year period).

The court has already addressed *supra* Defendants' argument that the
request must be limited to South Dakota, and therefore, overrules the
objection.  <u>See</u> <u>State Farm Mut. Auto. Ins. Co.</u>, 538 U.S. at 422.  Furthermore,
Defendants' boilerplate objections of "overbroad, vague, and ambiguous" have
been addressed *supra* and are overruled.  <u>See</u> <u>O'Daniel</u>, No. CIV. 11-5088-JLV,
2013 WL 164225, at *3 (D.S.D. Jan. 15, 2013).  The court finds Plaintiff's
stipulation that she is not requesting information related to specific claim files,
besides her own claim file, alleviates Defendants' concern that compliance
would cost an exorbitant amount of time and expense for Request No. 20, and
therefore, overrules the objection.

Defendants object that they responded "none" to Request No. 21 and that
no materials exist that are related to Plaintiff's claim for Request No. 21.  This
objection misses the point of the request; the request asks for documentation
regarding Defendants' general practices, not limited solely to the handling of
Plaintiff's claim.  Likewise, Plaintiff's stipulation addresses Defendants'
concerns, and is not seeking information related to specific claims that are not
Plaintiff's claim.  Defendants' general company practices regarding goals,
targets, and objectives are relevant and discoverable as it pertains to the issue
of punitive damages.  <u>See</u> <u>Roth</u>, ¶ 65, 667 N.W.2d at 669.  To the extent
materials do not exist as it pertains to Request Nos. 20 and 21, Defendants
shall certify to Plaintiff that no responsive materials exist.  Furthermore, the

17

court finds any concerns regarding sensitive information is properly protected by the entry of a Protective Order.  See *infra* Section III.

Accordingly, the court overrules Defendants' objections and grants the Motion to Compel as it pertains to Request Nos. 20 and 21.

### vi.  Worker's Compensation Calculations

### Request No. 22

> Documents regarding efforts to affect average claim costs, loss ratios, combined ratios, allocated loss expenses or underwriting profit for worker's compensation claims.  Plaintiff stipulates the request is limited to documents created or modified from January 1, 2012 to present.  Plaintiff further stipulates the request excludes documents from individual claim files and documents related solely to efforts to increase sales of insurance policies or underwriting efforts to reduce the risk of policies not yet issued.

Id at p. 20-21.

Plaintiff asserts the request is relevant to reveal intent and motive to reduce claim payouts.  Id. at p. 20.

Defendants object that the request is not relevant to a misrepresentation claim.  Id.  Defendants further object to the overbreadth of the request, again arguing it would take 2,981,628.6 hours at an expense of $74,540,715 to comply.  Id.  Defendants argue they do not maintain aggregate data of this nature and each claim is handled independent on the merits.  Id. at p. 21.  Despite Defendants claiming they do not maintain this data, Defendants raise the following additional arguments: overbroad, vague, ambiguous, not limited in time, insurance line, or individual claim, seeks information outside of the period of handling of Plaintiff's claim, and the request seeks privileged and proprietary information.  Id.

18

Plaintiff replies that Defendants' assertion that they do not maintain this information is contrary to what GBS says in its marketing materials. Id. at p. 20.

The court overrules Defendants' objection that the request is irrelevant, as misrepresentation is not this court's only consideration. See Lyon, No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (emphasis added) (granting a motion to compel for "[a]ny and all copies of documents referring . . . *loss ratios* . . . or *combined ratios*" in a case involving punitive damages). Likewise, the court finds the requested time-frame to be appropriate. See Lyon, No. CIV. 09-5070-JLV, 2011 WL 124629, at *10 (providing discovery for a ten-year period for loss ratios and combined ratios). Defendants' boilerplate objections to vague, ambiguous, etc. are overruled. See O'Daniel, No. CIV. 11-5088-JLV, 2013 WL 164225, at *3 (D.S.D. Jan. 15, 2013). Defendants' objections regarding the request seeking information not directly related to Plaintiff's claim is overruled. See Roth, ¶ 39, 667 N.W.2d at 669 (finding the company's general policies relevant for purposes of punitive damages).

Like Request Nos. 20 and 21, *supra*, the court finds Plaintiff's stipulation that she is not seeking information from each individual claim file alleviates the overbreadth of the request and the concern that Defendants would have to expend an exorbitant amount of time and expense to comply with the request; the objection is overruled. Furthermore, the court is satisfied that any sensitive nature associated with this request will be properly protected by the entry of a Protective Order. See *infra* Section III. To the extent Defendants

claim they do not maintain this data, Defendants shall certify to Plaintiff if they have no responsive discovery to the request.

Accordingly, the court overrules Defendants' objections and grants the Motion to Compel as it pertains to Request No. 22.

### vii.  Previous Litigation

#### Request No. 26

Depositions or trial testimony transcripts or recordings of any claims staff in this case in any extra-contractual suit arising out of the handling of a worker's compensation claim.  Plaintiff stipulates the request is limited to documents available from January 1, 2010 to present.

#### Request No. 27

Documents that identify names, dates and venues of extra-contractual suits filed against Defendants arising out of worker's compensation claims.  Plaintiff stipulates the Request is limited to lawsuits in the United States.  Plaintiff stipulates the request is limited to documents available from January 1, 2010 to present.

#### Request No. 28

Documents regarding market conduct examinations, cease and desist orders, consent orders or other regulatory investigations involving Defendant' handling of worker's compensation claims. Plaintiff stipulates the Request is limited to regulatory actions in the United States.  Plaintiff stipulates the request is limited to documents available from January 1, 2010 to present.

(Ex. 1 at p. 24, 26, 28).

Plaintiff asserts the requests are relevant in that they may reveal the following: similar events of claims handling, prior adverse rulings against Defendants on same issues, prior statements of Defendants' personnel regarding claims handling and internal procedures involved in handling claims.

Id. at p. 24-25.  Similarly, Plaintiff asserts the discovery may reveal intent and motive as it relates to punitive damages.  Id. at p. 26, 28.

Defendants again object to relevance, arguing the requests are not relevant to the misrepresentation claim.  Id. at p. 24, 26, 28.  Defendants state they answered that there is no such prior testimony for Request Nos. 26 and 27 that involves individuals who "directly handled" Plaintiff's workers' compensation claim.  Id. at p. 25.  Again, Defendants argue compliance of Request No. 28 would involve a review of every claim file involving 2,981,628.6 hours at an expense of $74,540,715.  Id. at p. 28.  Finally, Defendants argue discovery should be limited to South Dakota.  Id. at p. 27.

Defendants' objections to relevance are overruled, as the requests are relevant to the issue of punitive damages.  See Brown Bear v. Cuna Mut. Grp., 266 F.R.D. 310, 325–26 (D.S.D. 2009) ("Because the [litigation files] [Plaintiff] requests may reveal that [Defendants'] alleged conduct in this case occurs frequently and as a result risks harm to many, the requested documents may be relevant to demonstrate reprehensibility, which is a proper consideration in a punitive damages determination.").  Defendants' objection that no such prior testimony exists for those who *directly handled Plaintiff's claim* misses the point of the request.  The request is not limited to those involved in Plaintiff's claim, but involves litigation arises from Defendants' general handling of workers' compensation claims.  Defendants need not review every individual claim file, and therefore, their objection that complying would take 2,981,628.6 hours at an expense of $74,540,715, is without merit.  Defendants' assertion that they

21

do not maintain "aggregate data of this nature" is disingenuous.  Id. at p. 26.
The court is hard pressed to believe Defendants do not maintain some sort of
database or collection of records noting past litigation or have a manner in
which they could obtain such information, aside from having to review every
individual claim file.  The objection is overruled.  See Continental Illinois Nat'l
Bank & Trust Co. of Chicago, 136 F.R.D. at 684-85 ("All discovery requests are
a burden on the party who must respond thereto.  Unless the task of producing
or answering is unusual, undue or extraordinary, the general rule requires the
entity answering or producing the documents to bear that burden.").  Likewise,
this court has already addressed *supra* that the discovery need not be limited
to South Dakota.  See State Farm Mut. Auto. Ins. Co., 538 U.S. at 422.

Accordingly, the court overrules Defendants' objections and grants the
Motion to Compel as it pertains to Request Nos. 26, 27, 28.

### viii.  Financial Reports

### Request No. 33

Financial reports of Defendants.  Plaintiff stipulates the request is
limited to reports for the years 2012 through 2016.

(Ex. 1 at p. 35).

Plaintiff asserts the request is relevant to the issue of punitive damages.
Id.

Defendants assert they have produced responsive documents.  Id.
Defendants raise the following objections: relevance, seeks information outside
the period of Plaintiff's claim, unduly burdensome, annoyance, harassment,
undue expense, overly broad, not limited in scope, and seeks proprietary

22

information.  Id.  Defendants state the request is not proportional as their actual damages total less than $3,000.  Id. at p. 36.  Defendants further state that SDCL § 21-1-4.1 requires a hearing to determine whether punitive damages would be appropriate before allowing discovery.  Id. at p. 35.

Plaintiff replies that to the extent Defendants have produced relevant documents, they request Defendants direct their attention to those documents. Id.

To the extend Defendants have produced relevant documents, the court directs Defendants to specify to Plaintiff which documents are responsive to the request.  Defendants' objection to relevance is overruled; financial documents are clearly relevant in a claim for punitive damages.  See Burke v. Ability Ins. Co., 291 F.R.D. 343, 350 (D.S.D. 2013) (quoting Roth, ¶ 72, 667 N.W.2d at 670) ("Defendants also argue that their financial condition is not relevant to this case.  The court disagrees.  The South Dakota Supreme Court has held that 'a defendant's net worth is a guideline for assessing the amount of punitive damages.'").  See also Winterboer v. Edgewood Sioux Falls Senior Living, LLC, No. CIV. 12-4049-KES, 2014 WL 28863, at *6 (D.S.D. Jan. 2, 2014) (granting financial discovery where punitive damages were asserted). Judge Viken's Order Denying Defendants' Motion for Summary Judgment makes it clear that Plaintiff may be entitled to punitive damages in *addition* to actual damages.  (Doc. 130).  Therefore, Defendants' objection that the request is not proportional to the claim for $3,000 in actual damages is without merit, as it does not take into account the potential for punitive damages.

Furthermore, Defendants' objection that the court must hold a hearing to determine whether punitive damages are appropriate before allowing discovery, is a misstatement of the law.  Although SDCL § 21-1-4.1 requires such a determination, that statute is procedural in nature, and therefore, does not control in a federal diversity action concerning a Motion to Compel Discovery.[4]

In Dahl, the South Dakota Supreme Court held that SDCL § 21-1-4.1 is a procedural statute.  Dahl v. Sittner, 474 N.W.2d 897, 902 (S.D. 1991) ("SDCL 21–1–4.1 only affects the procedures involved in obtaining discovery regarding punitive damages and submitting the claim to the finder of fact.  It is a procedural statute.").  The well-established Erie Doctrine requires federal courts sitting in diversity jurisdiction to adhere to state substantive law.  Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).  Contrary, matters of procedure, are properly controlled by federal law.  See Bradshaw v. FFE Transp. Servs., Inc., 715 F.3d 1104, 1107 (8th Cir. 2013) ("In this diversity of citizenship case, the Federal Rules of Civil Procedure and Federal Rules of Evidence govern the disputes concerning discovery and the admission of evidence."); Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1255 (8th Cir. 1996) (citing Erie R. Co., 304 at 64) ("It is, of course, well-settled that in a suit based on diversity of citizenship

---

[4] This court notes that there appears to be a split of authority within the District of South Dakota on this issue.  See Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 870439, at *7 (D.S.D. Mar. 7, 2013) (noting "courts in this district have differed on whether SDCL 21–1–4.1 applies in federal court").  After conducting a thorough analysis on the case law within this District, this court is persuaded by the rationale consistent with the courts in this District that hold SDCL § 21-1-4.1 is procedural, and therefore, does not control in a federal diversity action concerning the resolution of discovery motions.

jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state.").

Fed. R. Civ. P. 26 conflicts with SDCL § 21-1-4.1 in that the former requires no hearing to take place before permitting discovery on the issue of punitive damages.  Accordingly, Fed. R. Civ. P. 26 is the appropriate procedural statute governing discovery in the pending diversity action, not SDCL § 21-1-4.1  See Janvrin v. Cont'l Res., Inc., No. 4:14-CV-4124-KES, 2017 WL 2838139, at *8 (D.S.D. June 30, 2017), aff'd, 934 F.3d 845 (8th Cir. 2019); Christensen v. Quinn, No. CIV. 10-4128-KES, 2013 WL 4774900, at *1 (D.S.D. May 20, 2013); Lillibridge v. Nautilus Ins. Co., No. CIV. 10-4105-KES, 2013 WL 870439, at *7 (D.S.D. Mar. 7, 2013); Houwman v. Gaiser, No. CIV. 10-4125-KES, 2011 WL 4345236, at *10 (D.S.D. Sept. 15, 2011); Bjornestad v. Progressive N. Ins. Co., No. CIV 08-4105, 2010 WL 11681662, at *1 (D.S.D. July 20, 2010); Kendall v. Bausch & Lomb, Inc., No. CIV. 05-5066, 2007 WL 9773481, at *2 (D.S.D. Feb. 7, 2007); Ammann v. Massey-Ferguson, Ltd., 933 F. Supp. 840, 841 (D.S.D. 1996).

Accordingly, the court overrules Defendants' objections and grants the Motion to Compel as it pertains to Request No. 33.

### ix.  Policies Issued to Menards

### Request No. 34

Documents related to the policies issued to Menards as well as documents relating to terms and retention limits of the policies, premiums assessed, loss experience and any special account status between Defendants and Menards.  Plaintiff stipulates the request excludes documents from individual claim files.

(Ex. 1 at p. 36-37).

Plaintiff asserts the request is relevant to reveal financial incentives, motives, and intent in reducing claim payouts.  Id. at p. 36.  Plaintiff further asserts the request may reveal the contract for services is not between GBS and Praetorian, but between GBS and Menards.  Id.  Such a discovery, Plaintiff asserts, is relevant because it would demonstrate that GBS had no legal authority to handle Plaintiff's claim and may contain direct financial incentives for GBS to reduce Menard's claim payout.  Id. at p. 37.

Defendants object to the request, claiming it is irrelevant to the misrepresentation claim and overbroad.  Id.  Defendants further cite that they will be shortly filing a Motion for Summary Judgement to show the remaining cause of action is not viable.  Id.

The court first notes the Motion for Summary Judgment Defendants cite to has since been filed and rejected by the District Judge.  (Doc. 130).  Plaintiff has made a threshold showing of relevance for the request to reveal agency relationships that may or may not have been provided for by contract. Furthermore, Plaintiff cites to the possible motives and incentives for reducing claim payouts that could result from the relationships between the parties. "Once the threshold relevance of requested discovery is established, the burden shifts to the party resisting discovery to demonstrate some valid reason not to provide the discovery."  O'Daniel, No. CIV. 11-5088-JLV, 2013 WL 164225, at *9 (D.S.D. Jan. 15, 2013).  Defendants provide no other argument for why the

request is irrelevant or overbroad, aside from their argument focusing solely on misrepresentation and an unsuccessful Motion for Summary Judgment.

Accordingly, the court overrules Defendants' objections and grants the Motion to Compel as it pertains to Request No. 34.

## II.  Motion to Extend Deadlines

Plaintiff filed a Motion to Extend the discovery deadline in this case. (Doc. 93).  The most recent Scheduling Order set a discovery deadline of December 6, 2019.  (Doc. 89).  Plaintiff requests the extension, in part, because Defendants did not comply with Plaintiff's document requests, requiring Plaintiff to file the pending Motion to Compel.  Defendants oppose the Motion. (Doc. 106).

Federal Rule of Civil Procedure 16 requires the court to issue an order setting deadlines for various stages of the litigation.  The Rule 16 scheduling order may be modified only for good cause.  FED. R. CIV. P. 16(b)(4); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 715 (8th Cir. 2008).  The primary measure of good cause is the movant's diligence in attempting to meet the scheduling order's requirements.  Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).  "While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, [the court] will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Sherman, 532 F.3d at 717.  Even when the movant shows good cause, the district court retains discretion as to whether to grant the motion.  Bradford, 249 F.3d at 809.  Further, the court

must interpret Rule 16 in manner so as to achieve the "just, speedy, and inexpensive determination of every action."  See FED. R. CIV. P. 1.

The court finds Plaintiff has shown good cause meriting an additional extension in this case because of the need to file the pending Motion to Compel to require Defendants to comply with discovery requests.  The court further finds prejudice to Defendants is limited because a trial date has not yet been set in this case.  The court notes, however, that only a limited extension is necessary.  Plaintiff filed the pending Motion to Compel (Doc. 91) and Motion to Motion to Extend (Doc. 93) on the same day as the previous deadline for discovery, December 6, 2019.  This demonstrates that Plaintiff had up until the discovery deadline to continue any discovery efforts before filing her Motion to Compel.  Furthermore, this case has been pending since 2016, and the court finds the parties have had nearly four years to conclude discovery. Additionally, two Motions for Summary Judgment have already been filed and ruled on by the presiding District Judge.  (Docs. 87, 130).  The court's limited extension on the discovery deadline will be permitted solely for the purposes of allowing the parties to comply with the terms of this Order and to follow up on any pertinent discovery inquiries arising from the production of discovery compelled by this Order.  Accordingly, the court grants Plaintiff's Motion to Extend (Doc. 93).

### III.    Motion for Protective Order

Plaintiff filed the pending Motion for Protective Order (Doc. 95) in an effort to facilitate discovery with Defendants.  Plaintiff filed a proposed

28

Protective Order.  (Doc. 96).  While Defendants are not opposed to the entry of a Protective Order, they take issue with Plaintiff's proposed Protective Order. (Doc. 105).  Defendants have filed their own proposed Protective Order.  (Doc. 105-2).

A party may obtain a protective order upon a showing of good cause. General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973). Federal Rule of Civil Procedure 26(c)(1) governs the granting of a protective order:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]

The trial court has significant discretion in either granting or denying a protective order, and "only an abuse of that discretion would be cause for reversal."  General Dynamics Corp. v. Selb Mfg. Co., 481 F.2d 1204, 1212 (8th Cir. 1973).  Under Rule 26(c), a court may grant a protective order only upon a showing of good cause by the moving party.  Id.  The movant must articulate "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  Id. (internal citation and quotation marks omitted).  The court must also consider "the relative hardship to the non-moving party should the protective order be granted."  Id. (internal citation omitted).

Due to the confidential nature that touches on various discovery requests subject to this Order, the court finds there is good cause for entry of a Protective Order.  Accordingly, the court grants Plaintiff's Motion for Protective Order.  (Doc. 95).  The court rejects Plaintiff's and Defendants' proposed Protective Orders at this time, and instead, orders the parties to propose to the court, a joint stipulation for entry of a Protective Order.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Plaintiff's Motion to Compel (Doc. 91) is granted. Defendants shall turn over discovery in compliance to this Order within **two (2) weeks** of this court's entry of a Protective Order.

ORDERED that Plaintiff's Motion to Extend Deadlines (Doc. 93) is granted.  All discovery, including expert discovery, shall be commenced in time to be completed within **two (2) months** of the date of this Order.

ORDERED that Plaintiff's Motion for Protective Order (Doc. 95) is granted.  The parties shall confer and submit to the court, within **one (1) week** of the date of this Order, a joint stipulation for entry of a Protective Order, specifying the terms and conditions for discovery which must be produced pursuant to this Order.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service

of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A),

unless an extension of time for good cause is obtained.  See FED. R. CIV. P.

72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the

waiver of the right to appeal questions of fact.  Id.  Objections must be timely

and specific in order to require review by the district court.  Thompson v. Nix,

897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

 DATED this 14th day of August, 2020.

 BY THE COURT:

 DANETA WOLLMANN
 United States Magistrate Judge